MAX TAVLIN, APPELLEE, v. LEE PASSIN TAVLIN, APPELLANT.

230 N. W. 2d 108

Filed June 5, 1975. No. 39816.

Crosby, Guenzel, Davis, Kessner & Kuester, for appellant.

Ginsburg, Rosenberg, Ginsburg & Krivosha, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

This is an action for dissolution of a marriage brought by the petitioner-husband. The District Court dissolved the marriage and made a property division. The respondent-wife prosecutes this appeal. Her three main complaints are as follows: (1) The trial court erred in determining that there was no antenuptial agreement; (2) the trial court erred in its division of the property between the parties; and (3) the trial court erred in not granting respondent attorney's fees. We affirm.

The parties to this action were married March 6, 1971. Petitioner had been married once before and at the time of the marriage was 64 years of age. Respondent had been married twice before and at the time of this third marriage was 46 years of age. Petitioner's first marriage ended in divorce after 30 years. Respondent's first marriage ended in divorce after 2 years. Her second marriage ended in divorce after 3 years.

While the respondent impliedly questions the marriage is irretrievably broken, she does concede that it certainly had stormy interludes. No purpose will be served by discussion on this point. Suffice it to say that we are in full agreement with the trial court, the marriage is irretrievably broken.

Respondent first argues that she proved the existence of an antenuptial agreement covering the property of the parties. Respondent contends that because of her experience in her previous marriages as well as the petitioner's obligation from his first marriage, she insisted on being made a full partner in petitioner's business and personal assets as a condition of the marriage. She further contends that petitioner agreed to this demand for an antenuptial arrangement several months before the marriage took place. Shares of stock were purchased or transferred into common ownership; substantial life insurance policies were purchased on the life of petitioner with respondent as beneficiary; and a joint bank account was opened. The trial court found that there was no antenuptial agreement, and we agree. The record is devoid of any document or writing which appears to be an antenuptial agreement. Respondent testified petitioner stated his intention to make her his "partner in life." He also opened up a joint bank account with her and put some property in their joint names. This, however, does not establish an antenuptial agreement. The complete answer to respondent's contention is that section 30-106, R. S. Supp., 1974, requires that an antenuptial contract to be effective shall be in writing, signed by both parties to such marriage, and acknowledged in the manner required by law for the conveyance of real estate or executed in conformity with the laws of the place where made. Antenuptial agreements are only valid in this state if made in conformity with this section.

Respondent's second assignment is that the trial court erred in its division of the property between the par-

ties. Petitioner maintains that she is the owner of one-half of all the property. Some of the property appears to have been conveyed to the petitioner and respondent as joint tenants prior to the marriage and some appears to have been conveyed subsequently. The stock certificates for the business corporation were transferred after the marriage. While the bill of sale appears to recite that it is dated May 1, 1970, the evidence would indicate otherwise and the trial court obviously so found. The record reflects that petitioner's corporation was not formed until May 1, 1970, and all the documents establishing the sale from petitioner in his sole capacity to the corporation took place on May 1, 1970. Respondent did not become petitioner's wife until March 1971, and the document runs from petitioner personally to petitioner and respondent as husband and wife.

Prior to the marriage petitioner gave respondent a check for $15,000 which was put into a bank account at the Irving Trust Company in New York City, in the name of the respondent and her mother. Subsequently, petitioner gave respondent $4,500 which was put into the same account. The sum of $18,500 was withdrawn from this account to purchase jewelry which respondent had at the time of the divorce. Before the marriage respondent also received a $4,000 fur coat from the petitioner which she still had at the time of the trial. Petitioner also gave respondent some insurance policies on his life, with the respondent as owner and beneficiary. As of the time of the trial, one policy had a cash value of $7,927.75 and the other a cash value of $6,708.83. Subsequently, respondent was given two other policies on petitioner's life. One of these was cashed by respondent on September 7, 1973, for the cash value of $6,010.50. The other had a cash value in excess of $7,200.

Aside from the gifts from petitioner, the only property brought into the marriage by the respondent was some minor household appliances. Respondent was very evasive on the property brought by her into the marriage.

She could not recall her earnings in the years immediately before the marriage; she could give no estimate of her earnings in 1969 or 1970. Her explanation was that she would have to refresh her recollections from the records and the records were lost. It is of significance that although she brought little in the way of property to the marriage she was living in a luxury apartment in New York City at the time of the marriage.

It is undisputed that the respondent made little, if any, contribution to the acquisition of the assets held at the time of the trial. It is likewise clear that petitioner's estate did not increase but rather diminished during the 2-year marriage. His net worth at the time of trial, considering his obligation from the previous marriage, was between $350,000 and $400,000. What we said in Fotinos v. Fotinos (1969), 184 Neb. 486, 168 N. W. 2d 698, is pertinent herein: "The correct rule in Nebraska is expressed in Bartunek v. Bartunek, 109 Neb. 437, 191 N. W. 671. In that case this court said: 'Under the authority of Myers v. Myers, 88 Neb. 656, and Bristol v. Bristol, 107 Neb. 321, the district court has power to consider all the property accumulated by the joint efforts of both husband and wife, and to adjust their respective property rights. By the voluntary conveyance of the home farm to the wife without consideration except love and affection, she has become vested with the legal title to the major portion of the joint accumulation; but the court will look behind this and decree according to the equities of the situation.' "

In the property distribution, the trial court granted respondent all interest in the life insurance policies held by her on the life of petitioner; all interest in the property referred to as "California real estate investment"; all cash in her possession or in bank accounts in her name alone or with members of her family; all items of jewelry and furs; all items of personal property in her possession, including an automobile; and in addi-

tion thereto, alimony in the amount of $20,000, or property of the approximate value of $80,835.

Respondent testified to the existence of various bank accounts opened in her own name with funds given her by petitioner, or otherwise obtained from funds of petitioner. In her reply brief respondent takes violent exception to a statement in petitioner's brief that respondent had written checks for some $56,000 on checking accounts in her name, as disclosed by the exhibits. Only a few checks are in evidence and they do not begin to total this amount. However, the deposits in one account in respondent's name during the period of the marriage total slightly in excess of $56,000. The evidence discloses that the respondent had at one time or another some eight bank accounts, including one in California. Petitioner testified that he was unaware of the existence of some of these accounts. Of the checks in evidence none appear to be for household requirements but all indicate they were for respondent's personal benefit.

The fixing of alimony rests in each case within the sound discretion of the trial court. Young v. Young (1974), 192 Neb. 735, 224 N. W. 2d 361. As we have observed many times, the problems of alimony awards are not subject to solution by mathematical formula. This is particularly true where a marriage is of very short duration. The court will take into consideration the estate of each party at the time of the marriage, their respective contributions since, the duration of the marriage, their age and condition of health, and all other pertinent facts and circumstances, and award an amount in alimony which appears to be fair and equitable between the parties on the circumstances present in that case.

In the instant case the respondent brought nothing into the marriage except property given to her by the petitioner. At the time of the trial the petitioner was 67 years of age and the respondent 48. Their marriage lasted 25 months. During that time the parties made at

least one trip to Europe and the respondent made several trips to visit relatives and friends. The checks in evidence indicate that she did considerable shopping in New York City. Respondent was less than candid in accounting on some financial transactions. From the record we can do no more than surmise that the trial court was not entirely satisfied with respondent's explanations.

While in a divorce action the case is to be tried de novo on the issues presented on appeal, this court in reaching its own findings will give weight to the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the opposite. Seybold v. Seybold (1974), 191 Neb. 480, 216 N. W. 2d 179.

This court is not inclined to disturb the division of property made by the trial court unless it is patently unfair on the record. This case does not meet that criteria. The parties had a stormy marriage of approximately 25 months. Petitioner put most of his property in joint tenancy with the respondent. Respondent contributed nothing to these assets. They were assets which petitioner had acquired long prior to his marriage to respondent. While both petitioner and respondent were evasive in their answers, it is apparent that the trial court accepted petitioner's version of the marriage rather than the respondent's. The trial court did not abuse its discretion. The division of property and the allowance made to the respondent to permit her to reestablish herself is adequate on the record.

Respondent's third assignment is directed to the fact that both parties are required to pay their own attorneys' fees. The award of attorneys' fees is discretionary with the District Court. Badberg v. Badberg (1975), 193 Neb. 844, 229 N. W. 2d 552. Where the trial court has made a property division and allowance of alimony, it may well feel to allow additional attorneys' fees would unbalance the division it had in mind. The trial court is in a much better position to make this decision. We

will not disturb it in the absence of an abuse of discretion. We affirm the action of the trial court and make no allowance for the services of respondent's attorney in this court.

The judgment is affirmed. Costs are taxed to the petitioner.

AFFIRMED.