ILA M. MUELLER, APPELLEE, v. OTTO MUELLER, APPELLANT.

279 N. W. 2d 631

Filed June 5, 1979. No. 42342.

William J. Panec, for appellant.

John McArthur, for appellee.

Heard before BOSLAUGH, McCOWN, CLINTON, and WHITE, JJ., and TESAR, District Judge.

TESAR, District Judge.

This is an appeal by respondent-husband from the division of property pursuant to a decree for dissolution of marriage.

The trial court entered a decree finding the marriage was irretrievably broken, and that the parties contributed approximately equal efforts in the accumulation of the real and personal property which they possess. Petitioner-wife was awarded her personal effects, furniture and furnishings in her possession, and her Ford automobile, with the following investments to also be hers: Checking account, $228; savings account, $693.88; savings certificate, $4,258.99; savings certificate, $3,289.18; and savings certificate, $1,798.70. The last certificate, the evidence discloses, was being held by the petitioner as trustee for her brother.

The respondent was given his Plymouth automobile, a Schwinn bicycle, his personal effects, and the following investments: Checking account, $15,000;

savings account, $8,000; farmers co-op stock, $25; policy, cash value, $13,800; and policy, cash value, $534.37.

The court found that each party was responsible for his or her respective debts except the appraisal fee for appraising their realty which was to be paid equally. The court found the value of their real estate to be $432,000 and that respondent would have the option to retain the real estate, if he wished to do so, by paying the petitioner the sum of $216,000 on or before November 1, 1978, and, if respondent elected to do so, he would receive the landlord's share of the 1978 income from the farm. The court found that if respondent did not elect to purchase the petitioner's share, then the farm should be sold at auction and, after deducting the expenses of sale, the remaining proceeds should be equally divided between the parties and the 1978 net income from the landlord's share should be divided equally. Each party was held to be responsible for his or her attorney's fees.

The parties were married for nearly 37 years at time of trial. It was the first marriage for each of them. Two children were born as a result of the union, a son and daughter. The son was killed in a car-train accident in 1969. The respondent was by occupation a farmer until he became ill with multiple sclerosis in 1965. He was 62 years of age at trial time. The petitioner was 58 years of age, not in good health, but not under a doctor's care at time of trial. She was employed, and had been for many years, and earned approximately $3.50 per hour for a 40-hour week. Respondent for many years had collected and kept all the farm and interest income, and the petitioner kept her earnings from her work in Lincoln, Nebraska, while the respondent stayed in Fairbury, Nebraska.

The evidence conclusively shows the husband was a good farmer, but the wife worked alongside of him, doing farmwork plus her household work.

They worked together, earned the money to buy all of their land, and owned 320 acres at the time of trial. It is true the husband had some farm equipment at the time of the marriage and he did inherit approximately $13,500 from his parents' estates. In 1965, the husband took sick with multiple sclerosis and never worked again. It was then that he appeared to give up. It was a case of a young couple starting with practically nothing, working diligently, and acquiring, by their joint efforts, a sizeable farm. Respondent became afflicted by an unfortunate disease, but from the record it appears that he has overreacted. He refused to help himself or let anyone help him. He assumed the role of a total cripple, and his personality became unbearable. The petitioner was compelled to leave the house, but she did everything possible to help her husband and try to preserve the marriage.

Respondent now urges two main assignments of error: (1) That reasonable efforts to effect reconciliation were not made, and (2) division of the property was not just.

With reference to the attempts at reconciliation, the record indicates the petitioner made every possible effort to save her marriage and met nothing but rebuffs from her attempts. After respondent contracted multiple sclerosis, he was depressed and took no interest in anyone or anything. It was at his urging that she was required to get a job. She consulted the minister and the doctor to help save the marriage, and ultimately had counseling with the conciliation court, all to no avail. The record nowhere indicates the slightest attempt or desire on his part to reconcile, or to do anything constructive. The situation in this case is governed by what we said in Condreay v. Condreay, 190 Neb. 513, 209 N. W. 2d 357: "It is only when there exists a reasonable possibility of reconciliation that the statutes require efforts to effect reconciliation to be made."

There was no such possibility in this case, and that assignment of error is without merit.

With reference to respondent's assignment of error relative to the division of property, we have but to quote what this court has so many times announced as the law, most recently repeated in Brus v. Brus, *ante* p. 161, 277 N. W. 2d 683: "In an appeal from a decree of dissolution of marriage, this court, in reaching its own findings, will give weight to the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the opposite. The rules for determining a division of property in an action for dissolution of marriage provide no mathematical formula by which such awards can be determined. This court is not inclined to disturb the division of property made by the trial court unless it is patently unfair on the record." To the same effect in Pfeiffer v. Pfeiffer, *ante* p. 137, 277 N. W. 2d 575, we said: "The * * * distribution of property rests in the sound discretion of the District Court and in the absence of an abuse of discretion will not be disturbed on appeal." See, Tavlin v. Tavlin, 194 Neb. 98, 230 N. W. 2d 108; Fanning v. Fanning, 194 Neb. 821, 235 N. W. 2d 878.

There has been no abuse of discretion here. The rules above announced are especially applicable in this case. Respondent complains that the court should have, in some manner, permitted him to buy out petitioner's interest in the farm. The court actually did that very thing, but respondent chose to ignore it. This case in no fashion whatsoever meets the criteria of being patently unfair. It is apparent, however, that a great deal of careful thought went into the court's determination of this case in its attempt to properly distribute the parties' assets.

We therefore affirm the court's decision in this case in all particulars, but find that the decree must be now modified with reference to the sale of the

real estate and the division of the 1978 farm income. Respondent is hereby given 30 days from the date of the filing of the mandate in the District Court to exercise his option, in writing, to purchase the petitioner's share of the real estate. The farm income for 1978 shall be divided equally between the parties. Costs, including an attorney's fee of $750 allowed petitioner's attorney for services in this court, are taxed to the respondent.

AFFIRMED AS MODIFIED.