C.J. LaBenz, appellee, v. Ellen LaBenz, appellant.
575 N.W. 2d 161

Filed February 17, 1998.    No. A-96-982.

Edward D. Hotz and Anne M. Breitkreutz, of Hotz & Weaver, for appellant.

Lawrence I. Batt and Thomas P. Kenny, of Batt & Associates, for appellee.

Hannon, Irwin, and Inbody, Judges.

Hannon, Judge.

This is an appeal from a decree dissolving the marriage between the respondent, Ellen LaBenz, and the petitioner, C.J. LaBenz. Ellen appeals on the grounds the trial court erred (1) in

determining that an account in the parties' names jointly, which account contained the proceeds from the sale of a home owned by C.J. at the time of the marriage but lived in by the couple for several years, was primarily nonmarital property and (2) in failing to award alimony. We conclude that the joint account was not marital property and that the trial court did not abuse its discretion in other matters. We therefore affirm.

## I. BACKGROUND

Ellen LaBenz and C.J. LaBenz were married on June 12, 1987, and divorced approximately 8 years later on December 29, 1995. No children were born of the marriage. C.J. graduated from medical school in 1975 and later became board certified in obstetrics and gynecology. He introduced evidence showing his net monthly income to be $7,109.05 and his monthly expenses to be $5,117. Ellen is a registered nurse and introduced evidence showing her net monthly income to be $1,765.62 and her monthly expenses to be $2,458.25.

Neither party contested the trial court's division of the marital property, with the exception of an account containing the net proceeds from the sale of a home which the parties lived in before and during their marriage. C.J. testified he purchased a residential lot in the Lake Candlewood area in 1983 and designed and constructed a home on the lot in 1984. Ellen testified she quit her employment for approximately 3 months because, although the new house was completed, someone needed to be available to let plumbers and other workers into the house. Ellen stated she spent a lot of time with the builder's wife, who is a decorator, selecting items such as tile, carpeting, brick, appliances, and mirrors for the house. Ellen testified that although she did not financially contribute to the construction of the house, she purchased groceries, cleaning supplies, towels, window treatments, dishes, and similar items. Ellen also stated that she paid no bills or house payments while living in the house.

Ellen and C.J. sold the house in June 1992, and C.J. deposited the proceeds into the "KPSP" investment account that was in both parties' names. Funds were withdrawn from this account to purchase a condominium. Additional facts regarding

the circumstances of both parties will be discussed in our analysis.

The district court entered a decree dissolving the marriage of the parties on December 29, 1995. The court refused to award alimony and ordered both parties to pay their respective attorney fees.

The court found that C.J. brought the following property to the marriage: a 1986 Mercedes Benz, farm equipment which was traded to purchase a 1994 Jeep, an IRA worth $301,555, and property worth $127,618. Ellen brought an IRA worth $7,338 to the marriage. Both parties were allowed to keep the household goods and items of personalty in their possession. Except for the condominium, the remainder of the parties' marital property consisted of various cash accounts. Apparently, the trial court intended to divide the marital property equally and ordered C.J. to pay Ellen $35,000 to equalize the division. The parties do not dispute the division of the marital property, except that Ellen maintains the account containing the proceeds from the sale of the home should have been treated as marital property. The account in question is referred to as the "KPSP account." The KPSP account contained $167,618.43, and the trial court awarded Ellen $10,000 of the account and C.J. the balance. Ellen maintains the entire account should have been treated as marital property. We have studied the evidence and the court's distribution of the marital property, but in view of the issues argued by the parties, we will avoid the unnecessary publication of the parties' personal business matters.

## II. ASSIGNMENTS OF ERROR

Ellen alleges the district court erred in (1) determining which assets constituted the marital estate and failing to award her an equitable percentage of that marital estate and (2) failing to award alimony.

## III. STANDARD OF REVIEW

The division of property and the awarding of alimony are matters entrusted to the discretion of the trial judge and, on appeal, will be reviewed de novo on the record and will be affirmed in the absence of an abuse of the trial judge's discretion. *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995).

In a de novo review on the record, an appellate court reappraises the evidence as presented by the record and reaches independent conclusions from those of the trial court. *Id.* However, if evidence is in conflict, the appellate court may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*; *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995).

## IV. ANALYSIS

### 1. TREATMENT OF KPSP ACCOUNT

■ Ellen claims the court failed to equitably divide the marital estate. She focuses on the distribution of the KPSP account. This account contained approximately $167,000 from the sale of the Lake Candlewood home. Ellen received $10,000 from this account. Thus, the trial court effectively treated only $20,000 of the KPSP account as marital property and gave each party one-half of that amount. The remaining money in the account was awarded to C.J. as nonmarital property. Ellen admits the account contains the proceeds of the sale of a home C.J. owned at the time the parties were married. Ellen also recognizes the general rule that property owned by a party at the time of the marriage is not marital property. See, *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994); *Lord v. Lord*, 213 Neb. 557, 330 N. W.2d 492 (1983). Ellen bases her claim that the trial court should have treated the entire account as marital property upon two theories: (1) under the exception to the general rule recognized in *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832 (1982), and (2) upon the fact the account was held in joint tenancy.

### (a) *Van Newkirk* Exception

■ The *Van Newkirk* exception to the rule that property owned at the time of the marriage is nonmarital property provides that where both of the spouses have contributed to the improvement or operation of such property, it may be treated as marital property.

In the instant case, Ellen does not dispute that C.J. brought the Lake Candlewood home into the marriage. The basis for her claim under *Van Newkirk* is that she significantly cared for the property during the marriage. Ellen testified that she lived in the

home and that during construction she let workers into the house and spent time with a decorator selecting tile, carpeting, brick, and various other items. Ellen stated she purchased towels, dishes, curtains, groceries, cleaning supplies, and some furniture for the house. C.J. testified that Ellen lived in the house, helped keep the house clean, and made "sure the neighbor kids didn't come in and tear it up."

■ The recent case of *Tyler v. Tyler*, 253 Neb. 209, 570 N.W.2d 317 (1997), which came down after the parties' briefs were filed but before the appeal was argued, settles any controversy on this issue. *Tyler* clearly held that before the *Van Newkirk* exception can be applied, the party claiming the benefits of it must offer evidence of the value of the contribution upon which the claim is made. The only evidence relating to the value of Ellen's contributions can be found in the following testimony: "And then after we moved in, I spent all of my savings for window treatments, but that wasn't alot — in those days it seemed like alot; it was like $5,000 maybe." Ellen was awarded at least as much as the *Tyler* case would justify. We need not decide whether that evidence is adequate, as the trial treated $20,000 of the account as marital property and C.J. did not appeal.

### (b) Title to Home Being in Joint Tenancy

Ellen argues that the property became marital property, or that she gained ownership of one-half, when C.J. placed the proceeds from the sale of the home in an account in the parties' joint names and used part of the proceeds to purchase a condominium in both names. C.J. testified he did not intend to make a gift to Ellen through the KPSP account.

Ellen relies on *Bonnell v. Bonnell*, 117 Wis. 2d 241, 344 N.W.2d 123 (1984); *Atkinson v. Atkinson,* 87 Ill. 2d 174, 429 N.E.2d 465 (1981), *cert. denied* 456 U.S. 905, 102 S. Ct. 1751, 72 L. Ed. 2d 162 (1982); *Carter v. Carter*, 419 A.2d 1018 (Me. 1980); and *Ayars v. Ayars*, 50 Md. App. 93, 436 A.2d 490 (1981), for the proposition that when a spouse places separate property in joint tenancy, the entire property becomes marital property. She also relies on *Anstine v. Anstine*, 214 Neb. 808, 336 N.W.2d 552 (1983), and *Grummert v. Grummert*, 195 Neb.

148, 237 N.W.2d 126 (1975) (spouse, one of two joint grantees on deed, was held not to have established by clear and convincing evidence that grantee intended to make gift to only one spouse).

Ellen recognized that in some cases involving conveyances from one spouse to another, or where the deed is held in joint title, the Supreme Court has held the court may look behind the deed and examine the equities of the situation. See, *Tavlin v. Tavlin*, 194 Neb. 98, 230 N.W.2d 108 (1975); *Fotinos v. Fotinos*, 184 Neb. 486, 168 N.W.2d 698 (1969). At oral argument, Ellen cited *Gerard-Ley v. Ley*, 5 Neb. App. 229, 558 N.W.2d 63 (1996), in which this court found there was no evidence to rebut the presumption created by the joint title to the real estate. There is no evidence that C.J. placed the house in joint tenancy before it was sold, and all of the above cases are concerned with the effect of the title to real estate. In the instant case, we are concerned with the effect of one spouse putting cash which is nonmarital property in joint names.

Neb. Rev. Stat. § 30-2722(b) (Reissue 1995) provides in part: "During the lifetime of all parties, an account belongs to the parties in proportion to the net contribution of each to the sums on deposit, unless there is clear and convincing evidence of a different intent." This statutory provision necessarily results in different principles being applied to determine the effect of placing deposits, as compared to real estate, in the joint names of two or more persons. Under § 30-2722(b), the placing of nonmarital funds in joint tenancy by the spouse owning such funds would not create a presumption of a gift. In the evidence, the account in question is called the "Candlewood House Proceeds Investment Account Westchester Capital Management KPSP Acct. No. 15452086." The document in evidence shows a starting balance of $175,855.64, withdrawals of $43,000 for the purchase and decoration of a "Condo," and a remaining balance of $167,618.43. Interestingly, the document shows the marital property interest in that account to be 5.83 percent of its value, or $9,772.15. The remaining balance is listed as nonmarital. (From the evidence, we are unable to learn the significance of "marital" or "nonmarital" or how the values were computed.) C.J. testified he did not intend to make a gift to Ellen by titling

the account in both names. There is no evidence that Ellen contributed any money to this account. By giving Ellen $10,000 from this account, the trial court awarded more than the evidence would support on this theory.

## 2. ALIMONY

The trial court did not award alimony to either party. Ellen argues she should have been awarded alimony. The Nebraska Supreme Court has stated that "in awarding alimony, a court should consider, in addition to the specific criteria listed in [Neb. Rev. Stat.] § 42-365 [(Reissue 1988)], the income and earning capacity of each party as well as the general equities of each situation." *Kelly v. Kelly*, 246 Neb. 55, 64, 516 N.W.2d 612, 617-18 (1994). Regarding payments of alimony, Neb. Rev. Stat. § 42-365 (Reissue 1993) provides in pertinent part:

> When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other . . . as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

In this case, the parties were married for approximately 8 years, and no children were born of the marriage. The record generally indicates that Ellen brought minimal assets into the marriage, while, in addition to his other assets, C.J. possessed considerable earning ability. Ellen testified that she was a registered nurse, was currently paid $16 an hour, and had been working full time since she completed her education in 1977. C.J. has been working as a physician since his graduation from medical school in 1975. Ellen testified that after moving into the Lake Candlewood home, she stopped working for about 3 months but kept her on-call nursing status with a nearby hospital during this period. There is no evidence that Ellen interrupted her education or career for the marriage, or suffered any

economic disadvantage from the marriage, nor is there evidence that she is unable to engage in gainful employment.

■ "The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances . . . make it appropriate." § 42-365. In determining whether alimony should be awarded, the ultimate test is one of reasonableness. *Lager v. Lager*, 232 Neb. 150, 440 N.W.2d 193 (1989); *Ritchie v. Ritchie*, 226 Neb. 623, 413 N.W.2d 635 (1987); *Baird v. Baird*, 196 Neb. 124, 241 N.W.2d 543 (1976). "[I]n reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result." *Kelly,* 246 Neb. at 65, 516 N.W.2d at 618. We think the same standard applies to the question of whether any alimony should be awarded. We cannot say that the trial court's refusal to award alimony was unreasonable or that it constituted an abuse of discretion.

## V. CONCLUSION

Having fully reviewed the record, we find the trial court did not abuse its discretion in treating the proceeds of the KPSP account as primarily a premarital asset and awarding such funds to C.J. We also agree with the court's determination that neither party is entitled to receive alimony. As such, we affirm the decision of the lower court.

AFFIRMED.

IRWIN, Judge, concurring.

I agree with the result reached by the majority but write separately to express my disagreement with the majority's reasoning concerning why Ellen is not entitled to an interest in the proceeds from the sale of the home which were placed into a joint account.

The majority recognizes that this court, in *Gerard-Ley v. Ley*, 5 Neb. App. 229, 235, 558 N.W.2d 63, 67 (1996), iterated the general rule in this state that " 'when a husband and wife take title to a property as joint tenants, even though one pays all the consideration therefor, a gift is presumed to be made by the spouse furnishing the consideration to the other . . . .' " This presumption is, of course, a rebuttable presumption. *Id.* Rather

than applying the presumption in the present case and considering whether it was rebutted, however, the majority dismisses this proposition of law by stating that "[t]here is no evidence that C.J. placed the house in joint tenancy before it was sold, and all of the above cases are concerned with the effect of the title to real estate." The majority then relies upon annunciations from Neb. Rev. Stat. § 30-2722(b) (Reissue 1995) to reach the conclusion that Ellen was not entitled to an interest in the proceeds from the sale of the house on the facts of this case.

*Gerard-Ley v. Ley, supra,* does not suggest that there is any distinction between whether the joint title in question is a joint title to "real estate" or personalty. I believe the general rule reiterated in that case applies equally to both situations, and I believe that to hold otherwise is to suggest a difference between the two types of property with no real distinction as to why they should be treated differently. As such, I would apply the proposition from *Gerard-Ley v. Ley* to the facts of this case and hold that once C.J. placed the proceeds from the sale of his premarital residence into a joint account with Ellen, a rebuttable presumption arose that he intended to gift an equitable interest in the proceeds to her.

I concur with the ultimate result reached by the majority, however. As the majority points out, C.J. testified that he did not intend to make a gift to Ellen by titling the account in both names. I would conclude that this evidence is sufficient to rebut the presumption and would therefore conclude that Ellen is not entitled to an interest in the proceeds. To reach this conclusion, the majority relies on § 30-2722(b). I do not agree with the majority that a provision of the probate code dictates the result in this dissolution case. I would rely upon the evidence presented to rebut the *Gerard-Ley v. Ley* presumption and affirm on that basis.