WILSON P. HILL, APPELLEE, V.
TWYLA J. HILL, APPELLANT.
634 N.W.2d 811

Filed October 2, 2001.   No. A-00-867.

Paul M. Conley for appellant.

Amie C. Martinez, of Anderson, Creager & Wittstruck, P.C., for appellee.

HANNON, INBODY, and MOORE, Judges.

INBODY, Judge.

## INTRODUCTION

Twyla J. Hill appeals from the portion of the order of the Lancaster County District Court dissolving her marriage to Wilson P. Hill which denied her an alimony award. Twyla also claims that the district court erred in excluding from evidence a videotape of a seminar presentation on fibromyalgia.

## STATEMENT OF FACTS

Twyla and Wilson were married on March 14, 1977. The parties adopted one child, Julane, who has since reached the age of majority.

In 1979, the parties purchased a home located in Lincoln, Nebraska. In 1989, the parties separated. Twyla and Julane remained in the marital home, and Wilson moved into an

apartment. Julane resided with Twyla at the marital home for nearly 3 years, during which time Wilson paid one-half of the mortgage and provided some monetary support for Julane. Additionally, after moving out of the home, Wilson continued his previous efforts to remodel the home and contributed some of his own money to fund the remodeling. In June 1992, Julane moved in with Wilson, and from that time until November 1999, Wilson provided most of Julane's support except for one 6-month period of time when Julane was in the custody of the Lancaster County Separate Juvenile Court.

On March 9, 2000, Wilson filed a petition for dissolution. Trial in this matter was held on June 29. At the time of trial, Wilson was 48 years old and was unemployed. However, Wilson did not have any medical conditions which prevented him from working, he was actively seeking employment as a cook or chef, and his earning capacity is approximately $25,000 annually. Wilson had previously worked as an executive chef, earning $29,500 in 1997. However, Wilson left that employment in March 1998 when he moved to North Carolina to take care of his mother, who was terminally ill.

At the time of trial, Twyla was 50 years old and was employed as a licensed practical nurse earning over $12 per hour and working 40 hours per week. This equates to an annual income of approximately $25,000. Twyla also receives health insurance and retirement benefits through her employment. At trial, Twyla testified that she did not expect her employment to continue beyond another 3 or 4 weeks because of a medical condition known as "fibromyalgia chronic fatigue syndrome," which causes her pain, stiffness, and fatigue. Twyla sought to introduce a videotape of a seminar presentation on fibromyalgia. Wilson posed hearsay, foundation, and relevance objections to the exhibit, which objections were sustained by the trial court.

On July 1, 2000, the Lancaster County District Court filed an order dissolving the parties' marriage and denying Twyla's request for alimony. Twyla has timely appealed to this court.

## ASSIGNMENTS OF ERROR

On appeal, Twyla claims that the district court erred in failing to award her alimony and in excluding from evidence a videotape of a seminar presentation on fibromyalgia.

## ANALYSIS

*Alimony.*

Twyla's first assigned error is that the district court erred in failing to award her alimony.

The division of property and the awarding of alimony are matters entrusted to the discretion of the trial judge and, on appeal, will be reviewed de novo on the record and will be affirmed in the absence of an abuse of the trial judge's discretion. *LaBenz v. LaBenz*, 6 Neb. App. 491, 575 N.W.2d 161 (1998). In a de novo review on the record, an appellate court reappraises the evidence as presented by the record and reaches independent conclusions from those of the trial court. *Id.* However, if evidence is in conflict, the appellate court may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness. *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607 N.W.2d 517 (2000). The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. *Id.*

Factors which should be considered by a court in determining alimony include (1) the circumstances of the parties; (2) the duration of the marriage; (3) the history of contributions to the marriage, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities; and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. Neb. Rev. Stat. § 42-365 (Reissue 1998); *Kalkowski v. Kalkowski, supra.* In awarding alimony, a court should consider, in addition to specific statutory criteria, the income and earning capacity of each party as well as the general equities of each situation. *Kosiske v. Kosiske*, 8 Neb. App. 694, 600 N.W.2d 840 (1999). When a marriage of significant length is linked with a significant difference in income or earning capacity between the parties, an award of alimony is appropriate. See *Wenger v. Wenger*, 200 Neb. 446, 263 N.W.2d 855 (1978).

In the present case, the evidence reflects a marriage lasting approximately 24 years; however, the parties have been separated for the past 12 years. The only child of the marriage has reached the age of majority. The record establishes that both parties were employed during the marriage, and there is no evidence that either party interrupted any career or educational opportunities for the marriage. Further, the evidence reflects that the earning abilities of both parties are nearly equal and that Twyla's medical condition had not caused a decrease in her earning capacity at the time of trial. On these facts, we cannot conclude that the denial of alimony was an abuse of discretion.

*Videotape Evidence.*

Twyla's second assigned error is that the district court erred in excluding from evidence a videotape of a seminar presentation on fibromyalgia. Twyla claims that she "sought to introduce a videotape seminar on fibromyalgia to explain her condition and the medical effects of that condition as it relates to her employability in the future." Brief for appellant at 14. Wilson contends that the district court properly excluded the videotape because a proper foundation by an expert witness was not laid, and consequently, the videotape did not qualify under the learned treatises exception to the hearsay rule.

In all proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 566 N.W.2d 750 (1997). It is within the trial court's discretion to admit or exclude evidence, and such rulings will be upheld on appeal absent an abuse of discretion. *Crewdson v. Burlington Northern RR. Co.*, 234 Neb. 631, 452 N.W.2d 270 (1990).

Since August 28, 1999, Neb. Rev. Stat. § 27-803 (Cum. Supp. 2000) has included a learned treatise exception to the hearsay rule. This exception found in subsection (17) provides:

Statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert

testimony or by judicial notice, to the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination. If admitted, the statements may be read into evidence but may not be received as exhibits.

This language contained in this subsection of Nebraska's statute was clearly taken from Fed. R. Evid. 803(18), which contains identical language, albeit, arranged in a different order. Because the learned treatise exception to the hearsay rule has not heretofore been addressed by Nebraska courts, we look to the federal court's interpretation of rule 803(18) for guidance.

The first issue that we must address is whether videotapes, although not specifically mentioned in the learned treatise exception to the hearsay rule, nonetheless fall within its dictates. The Second Circuit Court of Appeals has recently held that videotapes may be sufficiently authoritative to be admitted as a learned treatise under rule 803(18) even though they are not mentioned. The court stated that there is no reason to deprive a jury of the authoritative learning simply because it is presented in visual, rather than printed, format. *Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164 (2d Cir. 2000). We agree and hold that a videotape may be admissible pursuant to Nebraska's learned treatise exception to the hearsay rule provided that sufficient foundation is laid for its admission. Thus, we next proceed to address whether there was sufficient foundation laid for the videotape sought to be introduced in the instant case.

It has been held in the context of the federal learned treatise exception that a learned treatise is only admissible in conjunction with testimony by an expert witness. See *U.S. v. Turner*, 104 F.3d 217, 221 (8th Cir. 1997) (pursuant to learned treatise exception to hearsay rule, "portions of the text may be read only to the extent that it is called to the attention of an expert witness or relied upon by the expert witness in direct examination"); *Tagatz v. Marquette University*, 681 F. Supp. 1344, 1351 (E.D. Wis. 1988), *aff'd* 861 F.2d 1040 (7th Cir. 1988) ("learned treatises are excluded by the hearsay rule unless they are called to the attention of an expert witness or relied upon by the witness"); *Dartez v. Fibreboard Corp.*, 765 F.2d 456 (5th Cir. 1985) (admission of medical articles improper where plaintiff's medical expert did

not testify regarding the articles); *Tart v. McGann*, 697 F.2d 75 (2d Cir. 1982).

The reasoning for this requirement has been succinctly set forth by 5 Joseph M. McLaughlin, Weinstein's Federal Evidence § 803.23[1] (2d ed. 2001):

> The difficulty with learned treatises is not the ususal hearsay danger of admitting unreliable evidence, but rather the possibility that the jurors will misunderstand and misapply the evidence without expert guidance. Consequently, only those treatises whose existence is disclosed while an expert is on the stand, either by the expert on direct examination or by the questioner in the course of cross-examination, are admissible.

Stated another way, an expert witness must be "on the stand and available to explain and assist in the application of the treatise" in order to alleviate the risk that a treatise might be misunderstood and misapplied by the jury. Rule 803 Notes of Advisory Committee on Proposed Rules. Although these authorities reference the federal learned treatise exception, the reasoning is equally applicable to Nebraska's statute. Thus, we hold that pursuant to the language of Nebraska's learned treatise exception to the hearsay rule, a learned treatise is only admissible in conjunction with testimony by an expert witness.

In the instant case, Twyla sought to introduce into evidence the videotape of the seminar presentation without the benefit of expert testimony. This violates the language of § 27-803(17) which contemplates that the learned treatise exception to the hearsay rule will be either used by calling statements "to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination." Consequently, the district court properly excluded the videotape of the seminar presentation, and this assigned error is without merit.

## CONCLUSION

In sum, the district court did not abuse its discretion in failing to award alimony to Twyla or in excluding from evidence the videotape of the seminar presentation on fibromyalgia. Consequently, the decision of the district court is affirmed.

AFFIRMED.