IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

SHEMEK V. BROWN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MELANIE SHEMEK, APPELLEE,

V.

JIMMY BROWN, APPELLANT.

Filed June 23, 2015.    No. A-14-760.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed in part, and in part reversed and remanded.

Terry K. Barber, of Barber & Barber, P.C., L.L.O., for appellant.

Gregory D. Barton, of Barton Law, P.C., L.L.O., for appellee.

IRWIN, INBODY, and RIEDMANN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Jimmy Brown appeals an order of the district court for Lancaster County, Nebraska, in which the court established paternity, custody, parenting time, support, and fees. On appeal, Brown asserts that the court erred in not considering the parenting time preferences of the minor child, in allegedly permitting the guardian ad litem to not perform certain duties, in declining proffered evidence, in awarding fees, and in awarding an improper amount for child support. We find that the court erred in failing to consider the minor child's desires and wishes in making its best interests determination with regard to custody and parenting time, and we reverse and remand for further proceedings.

- 1 -

## II. BACKGROUND

The parties to this action, Melanie Shemek and Jimmy Brown, are the parents of one child, Jediah, who was born out of wedlock in March 2001. The parties lived together until September 2012, when they separated as a result of a variety of conflicts.

When the parties separated, they initially attempted an arrangement where Jediah would spend 7 days with Melanie, then 7 days with Jimmy. That arrangement did not work.

In January 2013, Melanie filed a complaint in which she sought a finding of paternity, an order regarding custody and parenting time, and an order regarding child support. In March 2013, the district court entered an order continuing the parties' schedule of Jediah alternating weeks between them.

In May 2013, Melanie filed a motion to modify the district court's temporary order and alleged that the alternating schedule was not working. In September 2013, she filed another motion to modify the court's temporary order and alleged that Jimmy had repeatedly violated the court's temporary orders.

In October 2013, the district court entered an order modifying the custody arrangement. The court awarded sole legal and physical custody of Jediah to Melanie and awarded Jimmy parenting time as determined by Melanie. The court also appointed a guardian ad litem.

In January 2014, Melanie filed a motion to suspend Jimmy's parenting time. She again alleged that Jimmy had repeatedly violated the court's prior temporary orders. Soon thereafter, Jimmy filed a motion requesting the court order counseling for the parties and for Jediah. The court subsequently entered a temporary order suspending Jimmy's parenting time and ordering a psychological evaluation of Jediah.

In January 2014, Jimmy filed a motion requesting the court interview Jediah.

The matter came on for trial during June and July 2014. The court heard testimony from Melanie and Jimmy, and received evidence from both parties and from the guardian ad litem.

Melanie testified about the parties' separation, the initial attempts at alternating weeks of parenting time, and how that arrangement did not work. She also testified about periods of time where Jediah would continually run from her care and run to Jimmy, regardless of whether it was Melanie's time to have parenting time. She testified about communication problems. She also testified about improvements for Jediah at school and in his involvement in activities since Jimmy's visitation had been suspended.

Jimmy testified that he had been unemployed since March 2013 as a result of a diagnosis of lung cancer. He testified about his income and his medical condition. He also testified about Jediah's running from Melanie's care to Jimmy.

During Jimmy's testimony, he requested the court interview Jediah, who was then 13 years of age, about his parenting time preferences. The court noted that a guardian ad litem had been appointed to protect Jediah's interests and declined to interview Jediah.

Also during Jimmy's testimony, he proffered two exhibits that the court subsequently declined to receive. One exhibit was an article from the Nebraska Lawyer magazine and the other was hearing testimony from the Nebraska Legislature. Melanie objected to the exhibits on the basis of hearsay. In its subsequent order on the merits of the case the court specifically ruled that it was not receiving these two exhibits.

In July 2014, the court entered an order. The court found that Melanie and Jimmy are the natural parents of Jediah. The court awarded sole custody to Melanie, subject to parenting time for Jimmy. The court ordered Jimmy to pay $675 per month in support. The court also ordered Jimmy to pay a portion of Melanie's attorney fees. This appeal followed.

## III. ASSIGNMENTS OF ERROR

In his brief, Jimmy has assigned seven errors, which we consolidate for discussion to five. First, Jimmy asserts that the district court erred in failing to consider the minor child's preferences as to parenting time. Second, Jimmy asserts that the district court erred in allegedly permitting the guardian ad litem to not perform certain duties. Third, Jimmy asserts that the court erred in declining proffered evidence. Fourth, Jimmy asserts that the court erred in awarding fees. Finally, Jimmy asserts that the court erred in awarding an improper amount of child support.

## IV. ANALYSIS

### 1. MINOR CHILD'S PREFERENCE

First, Jimmy asserts that the district court erred in not considering the minor child's parenting time preferences. Jimmy assigns error to the court's failure to interview Jediah and to the court's "permitting the guardian ad litem to not investigate" Jediah's preferences. We find merit to the assertion that the court did not consider Jediah's desires and wishes.

We note that Jimmy has not actually assigned as error that the district court erred in its determination of custody, and Jimmy has not actually assigned as error the amount of parenting time awarded by the district court. Rather, he specifically assigns and argues that the court erred in not considering the minor child's preferences. As such, we limit our review to the issues that Jimmy has assigned and argued, and we do not specifically review whether the court's determination on custody was correct or whether the determination of parenting time was correct.

Neb. Rev. Stat. § 43-2923(6)(b) (Cum. Supp. 2014) provides that in determining custody and parenting arrangements:

[T]he court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of . . .

. . .

(b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;

. . .

Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Spaghetti Ltd. Partnership v. Wolfe*, 264 Neb. 365, 647 N.W.2d 615 (2002), disapproved on other grounds by *ML Manager, LLC v. Jensen*, 287 Neb. 171, 842 N.W.2d 566 (2014).

In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning. *Id.* As a general rule, the word "shall" is considered mandatory and is inconsistent with the idea of discretion. *Id.* Thus, the plain and ordinary meaning of

§ 43-2923(6)(b) is that, in making custody and parenting arrangement decisions, the trial court is obligated to consider the best interests of the minor child and is obligated to include, in that determination, consideration of the desires and wishes of the minor child, if of an age of comprehension and if such desires and wishes are based on sound reasoning.

In the present case, the record indicates that Jimmy filed a motion with the court on January 17, 2014, requesting the court interview Jediah. The record presented on appeal does not include any ruling on this motion. During the trial on this matter, Jimmy testified that he was asking the court to interview or take testimony directly from Jediah and acknowledged that he had made such a request before, presumably referencing the January motion. He also testified that Jediah had explained to him why Jediah wanted an opportunity to speak with the judge.

The district court declined to interview or take testimony from Jediah concerning Jediah's preferences, indicating that because there was a guardian ad litem the court felt it was the guardian ad litem's responsibility to advance the interests of Jediah and to determine whether the court needed to "have [Jediah] in."

On appeal, Melanie does not dispute that the minor child's preferences are to be considered by the court when the child is of sufficient age of comprehension. Rather, Melanie argues that the court "was made well aware of [Jediah's] alleged preferences by the [guardian ad litem] and by one of Jimmy's supporting witnesses." Brief for Appellee at 31. She argues that Jimmy's assertion that the court did not consider Jediah's preferences "is utterly groundless." Brief for Appellee at 31. We disagree.

First, we note that the portions of the guardian ad litem's report cited by Melanie in support of her assertion do not include information that would make the court "well aware of [Jediah's] alleged preferences." The portions of the report cited by Melanie concern the guardian ad litem's reporting of interviews with Jediah. The report, however, includes very little, if any, indication of Jediah's desires and wishes concerning custody and parenting time.

The first portion of the guardian ad litem report cited by Melanie concerns an October 24, 2013, interview and includes indications that Jediah was "very reserved in his responses" and was "not forthcoming with information." It includes indications that Jediah stated that Melanie "was 'mean' to him" and that Melanie "would not give [Jediah] his phone because she did not want him to call [Jimmy]." It includes indications that Jediah referenced a number of specific incidents concerning Melanie, such as an incident where she "allegedly sat on [Jediah]," incidents where Melanie "'smacks him on the back of the head,'" and an incident where Melanie "grabbed [Jediah's] sweater." It includes an indication that Jediah "overall . . . was not happy at his mother's home."

The second portion of the guardian ad litem report cited by Melanie concerns a subsequent interview that apparently took place after the conclusion of the school year in the spring of 2014. It includes indications that Jediah was, at that time, "still somewhat reserved" but that his "demeanor was improved" and "he was more forthcoming with information." It includes indications that Jediah completed the school year with mostly "A" and "B" grades, that he played on the school basketball team and participated on the track team, and that he had been involved in doing chores on his grandparents' farm. It includes indications that Jediah "obviously misses [Jimmy] and wants to spend more time with him" and that the guardian ad litem "believe[d] [Jediah] will respond affirmatively to an alternating weekend schedule."

- 4 -

These portions of the guardian ad litem report do not indicate that Jediah was ever asked his desires or wishes concerning custody or parenting time or that he shared them, beyond general notions of at one time being "unhappy" with Melanie and wanting to "spend more time with [Jimmy] than he was at another time. At the time of the interviews referenced in the guardian ad litem's report, Jimmy was 12 or 13 years of age. At the time of trial, he was 13 years of age. The general and meager suggestions in the report concerning Jediah's wishes and desires are not sufficient to indicate that the court was aware of Jediah's desires and wishes about custody or parenting time or was able to make a determination of whether Jediah was of sufficient age of comprehension or whether his desires and wishes were based on sound reasoning.

The testimony of a witness referenced by Melanie is, similar, inadequate to reflect the court truly being able to consider Jediah's desires and wishes. During her testimony, one of Jimmy's witnesses was asked if Jediah had "indicate[d] to [her] what his state of mind was with respect to parenting time with his mom and dad." When the witness began to indicate what Jediah had actually said, Melanie's counsel made a hearsay objection. The court indicated that it believed the witness could "testify as to what her understanding was, but [not] as to what [Jediah] said." The witness then testified that her understanding was that Jediah was afraid of Melanie and wanted to be with Jimmy, and that Jediah was worried about Jimmy's health.

This testimony, in light of Melanie's objection and the court's ruling thereon, was specifically limited to the witness' understanding of Jediah's state of mind. It was not evidence of what Jediah's desires and wishes actually were--that is precisely what Melanie objected to and sought to keep the witness from testifying about, successfully.

Our de novo review of the record does not reveal other evidence that would indicate Jediah's desires and wishes, whether he was of an age of comprehension, or whether his desires and wishes were based on sound reasoning. In the absence of evidence on these matters, the district court could not have actually considered Jediah's desires and wishes or made a determination that they should not be considered. Such consideration is required by the plain meaning of § 43-2923(6)(b). As such, we find that the court abused its discretion in refusing to consider Jediah's desires and wishes with respect to custody and parenting time, and we remand for further proceedings consistent with this opinion.

### 2. GUARDIAN AD LITEM'S DUTIES

Next, Jimmy asserts that the district court erred in allegedly permitting the guardian ad litem to not perform certain duties, including investigating Jediah's parenting time preferences and "effectively see[ing] to the completion of [an] ordered psychological evaluation of [Jediah]." We find no merit to these assertions.

As Jimmy notes, the Nebraska Supreme Court addressed the role of guardian ad litem in *Betz v. Betz*, 254 Neb. 341, 575 N.W.2d 406 (1998). In that case, the court noted that the guardian ad litem's duties are to investigate the facts and learn where the welfare of the child lies and to report to the appointing court.

Jimmy argues that the district court erred in "permitting" the guardian ad litem to not investigate the desires and wishes of the minor child regarding custody and parenting time and in "permitting" the guardian ad litem to not see to the completion of a psychological evaluation

ordered by the court. Jimmy also argues that the court erred in receiving the guardian ad litem's report, which omitted this information.

We have already addressed the court's consideration of Jediah's desires and wishes above, and further discussion of that issue is not necessary.

With respect to the required psychological evaluation, we find no merit to Jimmy's assertions. In January 2014 the court ordered that Jediah undergo a psychological evaluation, at Jimmy's expense. Melanie testified that she took Jediah to Premier Psychiatric in Lincoln, Nebraska, in January, where he underwent a psychological evaluation. She also offered, and the court received, a report from Premier Psychiatric concerning the psychological evaluation of Jediah. In the guardian ad litem's report, the guardian ad litem specifically indicated that he reviewed "a psychological assessment report prepared by Premier Psychological Group relating to Jediah" and specifically indicated in the report that Melanie had "obtained a psychological evaluation on Jediah and is committed to following the recommendations, all of which are necessary and appropriate."

Jimmy's argument on appeal is simply that "[o]ne can see from the purported results of Jediah's evaluation by Premier Psychiatric Group, LLC . . . that the reasonable purposes of the court's order were not accomplished. The point is that the task was not completed; the job was not performed." Brief for Appellant at 15. Jimmy's argument appears to be more of an assertion that he was not satisfied that the psychological evaluation sufficiently investigated the basis for Jediah's tendencies to run from Melanie's home.

Jimmy did not object to the court's receipt of the report of Jediah's psychological evaluation. In that report, there is specific discussion of the parties' separation and Jediah's history of running from Melanie's care to Jimmy, among other matters. We find no merit to Jimmy's assertion that the district court committed some error by "permitting" the guardian ad litem to not see to the completion of the psychological evaluation--the evaluation was completed, the report concerning it was received without objection, and the guardian ad litem specifically referenced it in his report. This assigned error is meritless.

### 3. PROFFERED EVIDENCE

Next, Jimmy asserts that the district court "erred in declining to rule upon, and to give any weight to" exhibits proffered by Jimmy. The exhibits were a copy of an article from the Nebraska Lawyer magazine and hearing testimony from the Nebraska Legislature, purportedly about the benefits of joint custody and equal parenting time. We find no merit to Jimmy's assertions.

In all proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Hill v. Hill*, 10 Neb. App. 570, 634 N.W.2d 811 (2001).

In the present case, after all the witnesses were finished testifying, Jimmy's counsel offered two exhibits into evidence: an article from the January and February 2013 edition of the Nebraska Lawyer magazine, and a certified copy of a hearing from the Nebraska Legislature. Melanie's counsel objected that both exhibits were hearsay and lacked relevance. In fact, counsel objected that the Legislative hearing was "riddled with hearsay, double hearsay, triple hearsay, quadruple hearsay" and concerned a bill "that couldn't even get to the floor for a vote." Jimmy's counsel

argued for admission under the "catchall" exception to the hearsay rule and argued for admission of the hearing under the rule allowing public records. The court ultimately refused both exhibits.

On appeal, Jimmy cites us to Neb. Rev. Stat. § 27-702 (Reissue 2008), governing testimony of expert witnesses. It is not apparent how or why that rule demonstrates error by the trial court. It was not a basis for admission argued to the trial court, and the exhibits were not offered in the course of any witness' testimony, expert or otherwise.

Jimmy also points to the catchall exception to the hearsay rule contained in Neb. Rev. Stat. § 27-803(22) and the public record exception contained in Neb. Rev. Stat. § 27-803(7). Without regard to whether either exception could be applicable to these exhibits, Jimmy has not indicated why either exhibit was relevant.

Neb. Rev. Stat. § 27-402 provides that relevant evidence is admissible. Evidence which is not relevant is not admissible. See *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015). Relevant evidence means evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Id.*

At trial, Jimmy's counsel indicated that the purpose for offering both exhibits was "essentially to make some modest proof of the trend that has been developing toward trying to provide equal parenting time." Jimmy has not demonstrated how a magazine article or public hearing testimony had a tendency to make the existence of any fact of consequence to the merits of this case, involving these parties, more or less probable.

Finally, Jimmy indicates that "Nebraska appears to have never specifically recognized the learned treatise exception to the hearsay rule. Although he does not actually argue that the magazine article or the hearing testimony constituted a learned treatise, it appears that he suggests that exception was another basis for admission of these exhibits. Without even addressing whether these exhibits could somehow be considered learned treatises, Jimmy's assertion that the exception has not been recognized in Nebraska and his implication that it could somehow make these exhibits admissible are both without merit.

In *Hill v. Hill*, 10 Neb. App. 570, 634 N.W.2d 811 (2001), this court specifically addressed the learned treatise exception to the hearsay rule. In that case, we recognized that a learned treatise is only admissible in conjunction with testimony by an expert witness. *Id.* "[A]n expert witness must be 'on the stand and available to explain and assist in the application of the treatise' in order to alleviate the risk that a treatise might be misunderstood and misapplied by the jury." *Id.* at 576, 634 N.W.2d at 816, quoting Rule 803 Notes of Advisory Committee on Proposed Rules. We specifically held that "pursuant to the language of Nebraska's learned treatise exception to the hearsay rule, a learned treatise is only admissible in conjunction with testimony by an expert witness." *Id.* at 576, 634 N.W.2d at 816.

As noted, Jimmy did not offer either exhibit in the course of the testimony of any witness, expert or otherwise. He offered them separately, at the conclusion of the trial in this matter. We have recognized the exception, we have discussed requirements for its application, and our prior discussion of the exception makes it apparent that these exhibits are not admissible under the exception.

We find Jimmy's assertions that the court erred by not receiving his proffered exhibits to be meritless.

## 4. FEES

Next, Jimmy asserts that the district court erred in awarding fees to the guardian ad litem and in awarding attorney fees to Melanie. We find no merit to these assertions.

As Jimmy recognizes in his brief on appeal, awards of attorney fees and guardian ad litem fees are both generally committed to the discretion of the trial court. See *Boamah-Wiafe v. Rashleigh*, 9 Neb. App. 503, 614 N.W.2d 778 (2000); *National American Ins. Co. of Nebraska, Inc. v. Continental Western Ins. Co. of Nebraska, Inc.*, 243 Neb. 766, 502 N.W.2d 817 (1993); *Ziebarth v. Ziebarth*, 238 Neb. 545, 471 N.W.2d 450 (1991); *Huffman v. Huffman*, 236 Neb. 101, 459 N.W.2d 215 (1990); *Salmon v. Salmon*, 219 Neb. 899, 367 N.W.2d 142 (1985).

Jimmy's argument on appeal concerning the attorney fee and the guardian ad litem fee awarded by the district court is that "the determination of any fee award is not reasonable unless and until the tasks of the guardian ad litem are completed." Brief for Appellant at 17.

Jimmy does not, with respect to this argument about fees, indicate how the guardian ad litem's job was not completed. We have discussed above Jimmy's argument that the guardian ad litem failed to make sure that the psychological evaluation was completed, and we rejected that argument. Additionally, at the conclusion of the trial the court specifically asked if the guardian ad litem could be discharged from his service and Jimmy's counsel indicated that he had "no objection to that." This assigned error is without merit.

## 5. CHILD SUPPORT

Finally, Jimmy asserts that the district court erred in awarding an improper amount of child support. He challenges the court's determination of his income, as well as the court's failure to make adjustments to the support amount to reflect insurance expenses and the amount of parenting time he was awarded. We find no merit to these assertions.

Jimmy recognizes in his brief on appeal that the ultimate test in determining the appropriateness of a child support award is reasonableness and that the trial court's determination will normally be affirmed in the absence of an abuse of discretion. See *Helms v. Helms*, 234 Neb. 630, 452 N.W.2d 269 (1990). Moreover, as a general matter, child support is to be set according to the child support guidelines. See *Peterson v. Peterson*, 239 Neb. 113, 474 N.W.2d 862 (1991).

On appeal, Jimmy makes several arguments concerning the district court's child support award. He argues that the income attributed to him was "distorted upward" because of his cancer and disability determination, that the court did not consider his health insurance premium for Jediah, and that no adjustment was made to reflect that his parenting time substantially exceeds alternating weekends. We find no merit to any of these assertions.

First, the net monthly income attributed to Jimmy in the worksheet that the court attached to its order was $3,522.43. However, at trial Jimmy offered two proposed child support calculations. In both, Jimmy's net monthly income was represented as $3,897. Jimmy's own proposed calculations to the court indicated a higher net monthly income than the amount the court used. It is difficult to conceive of how the court could have "distorted" his income by using an amount less than his own exhibits would have supported.

Next, with respect to health insurance, Jimmy argues on appeal that the evidence established that he "pays a $70 per month health insurance premium for Jediah" and that the child support guidelines provide that such premiums should be deducted from income prior to

calculating support. We recognized in *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999) that the guidelines provide that the increased cost to the parent for health insurance for the child shall be allowed as a deduction from income. We also recognized, however, that if the evidence merely indicates the cost of an insurance premium that covers the family, rather than an increased cost for the child at issue, the evidence is insufficient to support such a deduction.

In this case, Jimmy testified that he maintained health insurance for himself, for Jediah, and for his "other children." He testified that he had four sons and one daughter. He testified that the difference between this family coverage and individual coverage was $70. He did not, however, establish that there was an increased cost to have Jediah covered, which is the relevant inquiry. As such, Jimmy did not adduce sufficient evidence to demonstrate that a deduction was appropriate. See *Rauch v. Rauch, supra*.

Finally, Jimmy argues on appeal that he should have received a deduction to reflect the "substantial" parenting time that he received. The parenting plan adopted by the court provides that Jimmy have parenting time every other weekend and according to a typical holiday parenting time schedule. The court also ordered that Jimmy have parenting time every other Wednesday. It is not apparent how or why Jimmy's parenting time "substantially exceeds" the time contemplated by the child support guidelines such that the failure to grant a deviation would be an abuse of discretion. See *Bevins v. Gettman*, 13 Neb. App. 555, 697 N.W.2d 698 (2005).

The court ordered Jimmy to pay $675 per month child support. Jimmy offered two alternative child support calculation worksheets. Both of them included Jimmy's calculation of the amount of child support owed and then proposed adjustments to the support amount for joint physical custody. In both exhibits, Jimmy calculated that his support obligation, prior to any adjustment for joint custody, would have been $1,096.59. The court did not award joint custody, and ordered a child support amount more than $300 less than Jimmy's own calculation worksheets would have indicated. Jimmy's assertions on appeal concerning child support are meritless.

## V. CONCLUSION

We find no merit to most of Jimmy's assertions on appeal, and we affirm in part. We find that the district court erred in failing to consider the minor child's desires and wishes regarding custody and parenting time, and we reverse and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.