(No. 53395.—

JANET R. ATKINSON, Appellee, v. JOHN F. ATKINSON Appellant.

*Opinion filed November 13, 1981.—Rehearing denied November 25, 1981.*

Bernard Rinella, of Rinella & Rinella, and Donald C. Schiller, of Chicago, for appellant, and John F. Atkinson, of Chicago, *pro se.*

Bentley, DuCanto & Doss, Ltd., of Chicago (Joseph N. DuCanto and Paul J. Bargiel, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

The marriage of John F. Atkinson (Jeff) and Janet R. Atkinson (Janet) was dissolved by the circuit court of Cook County on October 5, 1978. On January 25, 1979, the trial court awarded custody of the two daughters, ages 8 and 6, to Janet with liberal visitation to Jeff and reserved the question of specific visitation, child support, property division, and assessment of fees and costs. Jeff filed an appeal from this order on February 13, 1979, specifying the issue of custody. On March 26, 1979, the court awarded the marital home to Janet and made certain dispositions of property. On June 13, 1979, the court issued a supplemental judgment order which, *inter alia*, provided for certain dispositions of property, child support and visitation, rehabilitative maintenance, and fees and costs. On July 12, 1979, Jeff filed a second notice of appeal complaining of two provisions of the supplemental judgment.

On March 20, 1980, the Appellate Court for the First District affirmed the award of custody and stated the circuit court decision was not decided on the basis of sex and the record did not demonstrate an improper presumption in favor of the mother. The appellate court also affirmed the award of the marital home to Janet, *inter alia*, but reversed that part of the circuit court's judgment

requiring the establishment of a trust fund for the benefit of the children. (82 Ill. App. 3d 617.) We granted Jeff Atkinson's petition for leave to appeal.

We initially consider Janet Atkinson's contention that this court lacks jurisdiction to entertain Jeff's appeal from the circuit court's order awarding custody on January 25, 1979. She argues that the custody order was not final and appealable, and Jeff is therefore precluded from raising the custody issue on appeal.

Under Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)), where multiple claims for relief are involved in an action, an appeal from a final judgment as to less than all of the claims may only be taken if the trial court has made an express written finding that there is "no just reason for delaying enforcement or appeal." No such finding was made here. Thus, the custody order was not a judgment from which an immediate appeal could be taken.

"The provisions of our rule were aimed at discouraging piecemeal appeals in the absence of some compelling reason and at removing the uncertainty as to the appealability of a judgment which was entered on less than all of the matters in controversy." *In re Marriage of Lentz* (1980), 79 Ill. 2d 400, 407.

See *Davis v. Childers* (1965), 33 Ill. 2d 297, 300.

The order entered January 25, 1979, awarding custody to Janet was not a final order subject to the right of appeal. It did not contain the required Rule 304(a) findings. *White Way Sign & Maintenance Co. v. Seltzer Pontiac, Inc.* (1974), 56 Ill. 2d 342, 345.

Rule 303(c)(2) (73 Ill. 2d R. 303(c)(2)) requires the appellant to "specify the judgment or part thereof appealed from." In the notice of appeal dated July 12, 1979, Jeff asked for a review of two provisions in the supplemental judgment order of June 13, 1979, concerning the interest in the marital home and the establishment of a trust fund for the children. The notice of appeal is expressly limited to

these matters. Jeff failed to specify that he was appealing the award of custody in his July 12, 1979, notice of appeal. Therefore we conclude that the appellate court lacked jurisdiction to review the custody award. (See *People v. Lowe* (1975), 30 Ill. App. 3d 49, 51; *Wells v. Kern* (1975), 25 Ill. App. 3d 93, 99; *People v. Harvey* (1972), 5 Ill. App. 3d 499, 502, *cert. denied* (1973), 410 U.S. 983, 36 L. Ed. 2d 179, 93 S. Ct. 1504; *Scheffler v. Ringhofer* (1966), 67 Ill. App. 2d 222, 224-25.) The judgment of the appellate court concerning custody is thus vacated and the appeal from the order awarding child custody is dismissed.

We now consider the award of the marital property. The trial court awarded Janet Atkinson all of the marital property (with the exception of Jeff Atkinson's individual retirement account), rehabilitative maintenance of $350 per month for four months, as well as the entire interest in the marital home. Jeff Atkinson was ordered to pay $261 per week in child support, and establish a $100,000 trust fund to secure the children's education and support.

We agree with the appellate court that the trial court exceeded the scope of its discretion in ordering the establishment of a trust fund for the benefit of the children.

The section of the Marriage Act relied upon in establishing the trust was section 503(d), which states:

"The court may protect and promote the best interests of the children by setting aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent child of the parties." (Ill. Rev. Stat. 1977, ch. 40, par. 503(d).)

This section of the Marriage Act was patterned after section 307(b) of the Uniform Marriage and Divorce Act. (The Uniform Marriage and Divorce Act was drafted by the National Conference of Commissioners on Uniform State Laws, composed of commissioners appointed from each of the States, the District of Columbia and Puerto Rico. The

Act was approved by the Conference in 1970, amended in 1971, and again in 1973. (9A Unif. Laws Ann. III, 91 (1979).)) The Commissioners' Comments to that section state, in part:

"Subsection (b) affords a way to safeguard the interests of the children against the possibility of the waste or dissipation of the assets allotted to a particular parent in consideration of being awarded the custody or support of a child or children." (9A Unif. Laws Ann., Commissioners' Comments, at 144 (1979).)

We concur in the appellate court's assessment that the imposition of a section 503(d) trust is "inappropriate in the absence of evidence showing some need to protect the interests of the children" (82 Ill. App. 3d 617, 627) and therefore inappropriately applied to a responsible parent.

Jeff Atkinson also contends that the award of the marital home to the wife was erroneous. The parties agree that the marital home was purchased with Jeff's nonmarital funds ($40,000) and title was taken with Janet Atkinson in joint tenancy. From the time the property was put into both parties' names as joint tenants, it is presumed to be marital property despite the fact that one spouse has furnished all of the consideration out of nonmarital funds (*In re Marriage of Rogers* (1981), 85 Ill. d 217, 223).

Section 503(c) of the Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)) requires the trial court to divide the marital property "in just proportions considering all relevant factors, including:

"(1) [T]he contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) *the relevant economic circumstances of each*

*spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;*

(5) any obligations and rights arising from a prior marriage of either party;

(6) any antenuptial agreement of the parties;

(7) the age, health, station, occupation, *amount and sources of income,* vocational skills, employability, estate, liabilities, *and needs of each of the parties;*

(8) *the custodial provisions for any children;*

(9) whether the apportionment is in lieu of or in addition to maintenance; and

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 40, pars. 503(c)(1) through 503(c)(10).)

Under section 503(c), Jeff's contribution is recognized. Other factors under the preceding section weigh in favor of Janet Atkinson. The marital home was valued at $140,000 with an outstanding mortgage of $55,000. Janet Atkinson's annual salary for her part-time work was $15,000. Jeff Atkinson's annual income from his employment was $26,000. His annual income from his nonmarital assets is about $27,800. Jeff's economic circumstances, including his opportunity to acquire assets and income, were superior. The result was not inequitable under the circumstances. The trial court acted within the scope of its discretion in awarding almost all of the marital property to Janet. (See *In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 36-38.) Both parties also agree that, given the familiarity with the home environment, proximity to school, and nearness of the children's neighborhood friends, it is in the children's best interest to remain in the marital home.

Finally, Jeff Atkinson contends that he is entitled to a refund of $5,567.71 which Janet withdrew from their joint checking account after the judgment for dissolution was

entered. Jeff had made the only deposits to the account and he made them after the dissolution. Jeff's argument that the money came from his nonmarital funds and therefore should be returned, overlooks the fact that the bank account was held in joint tenancy. It is well established that each joint tenant possesses a present estate in the assets comprising the joint tenancy. (*Kane v. Johnson* (1947), 397 Ill. 112.) The judgment of dissolution did not affect the parties' joint interest in that joint bank account. Janet did make a number of withdrawals for her own personal expenses. While Jeff protested frequently at the amount of money Janet was spending, he never sought to prevent Janet from using the account. There is no indication that the parties agreed the money from the joint account was to be used only for the maintenance of the home and care of the children. We agree with the appellate court that Janet had the right to withdraw funds from the account, despite the fact that the deposits to the account were made by Jeff. Accordingly, we affirm that part of the appellate court decision.

That part of the judgment of the appellate court reversing the judgment of the trial court as to establishment of a trust fund and affirming the circuit court's division of property is therefore affirmed. That part of the appellate court judgment which affirmed the trial court as to custody is vacated and the appeal from the custody order is dismissed.

*Affirmed in part and vacated in part; appeal dismissed in part.*