# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Laport v. MB Financial Bank, N.A.*, 2012 IL App (1st) 113384

---

| | |
|---|---|
| Appellate Court Caption | JODY LAPORT, as Cotrustee of the Carmella Laport Irrevocable Trust Dated June 1, 1994, Plaintiff-Appellant, v. MB FINANCIAL BANK, N.A., Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-11-3384 |
| Filed | December 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from defendant bank's management of a trust for plaintiff and her sister, the trial court properly dismissed plaintiff's complaint alleging that defendant failed to comply with her oral directions to eliminate the trust's exposure to stock market risks, since the terms of the investment management agreement the sisters had with the bank required that plaintiff's directions be in writing. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-8840; the Hon. Bill Taylor, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Leslie A. Blau and Paul D. Malmfeldt, both of Blau & Malmfeldt, of Chicago, for appellant.

James E. Dahl and William D. Nagel, both of Dahl & Bonadies, LLC, of Chicago, for appellee.

Panel

JUSTICE SIMON delivered the judgment of the court, with opinion.

Presiding Justice Harris and Justice Quinn concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Jody Laport, appeals from an order of the circuit court of Cook County granting the motion to dismiss her complaint filed by defendant, MB Financial Bank, N.A. On appeal, plaintiff contends that the court erred by dismissing her complaint on the basis that she did not comply with the terms of the parties' contract or Illinois law in directing defendant to take certain actions. For the reasons that follow, we affirm.

¶ 2                             BACKGROUND

¶ 3     On June 27, 2011, plaintiff filed a second amended complaint against defendant alleging claims of breach of fiduciary duty and breach of contract. Plaintiff asserted that she and her sister, Loretta DeLuca, were beneficiaries and cotrustees of the Carmella Laport irrevocable trust dated June 1, 1994 (Trust). In February 2007, plaintiff and DeLuca entered into a written investment management agreement (Agreement) with defendant in which plaintiff and DeLuca provided defendant with discretionary authority to manage the assets in the Trust's investment account. Pursuant to the Agreement, defendant was required to follow the directions given by plaintiff and DeLuca, who were the principals of the investment account, and those directions could be communicated orally or in writing.

¶ 4     Plaintiff also asserted that on or around July 7, 2008, she informed DeLuca that she was planning to meet with representatives of defendant and modify the Trust's investment guidelines so its portfolio would not be exposed to risks from the stock market, and DeLuca did not object to her stated plans. On or around July 14, 2008, plaintiff met with Richard Block and Joseph Kure, employees of defendant, and told them that she wanted to change the Trust's investment guidelines so that the Trust would have no exposure to stock market risks. Plaintiff also told Block and Kure that she had discussed these directions with DeLuca, and neither Block nor Kure indicated that they would not follow plaintiff's instructions. On or around July 24, 2008, plaintiff met with Frances Fata, an employee of defendant, and told

Fata that she wanted to change the Trust's investment guidelines so that the Trust would have no exposure to stock market risks going forward, and Fata did not indicate that she would not follow plaintiff's directions. Fata subsequently met with plaintiff and provided her with an investment policy review prepared by defendant, and plaintiff believed at the conclusion of that meeting that defendant would change the investment guidelines of the Trust's account pursuant to her directions. Plaintiff further asserted that despite her instructions, the Trust's investment account continued to have stock positions from July to November 2008, and the Trust suffered market losses of approximately $360,000 as a result.

¶ 5    Plaintiff alleged that defendant owed a fiduciary duty to her and DeLuca and that it had breached that duty by failing to follow her directions and modify the investment guidelines of the Trust's investment account so that it would not be exposed to stock market risks or notify her that it was unable to do so without written authorization. Plaintiff also alleged that defendant had breached the Agreement by failing to modify the investment guidelines pursuant to her instructions. Plaintiff further alleged that she had suffered damages as a direct and proximate result of defendant's breaches of its fiduciary duty and the Agreement and requested the court enter a judgment in her favor for an amount of compensatory damages to be determined at trial.

¶ 6    Plaintiff attached a copy of the Agreement to her complaint, which was signed by plaintiff and DeLuca as principals, and in which defendant was appointed as the investment management agent of the Trust and directed to open and maintain an investment management account in the Trust's name. Under the Agreement, defendant could retain, purchase, and sell the assets it administered in such manner as it determined without prior approval from plaintiff or DeLuca except for directed investment assets, which were defined as "specific property, including shares of MB Financial, Inc.," that is retained, purchased, or sold pursuant to the principal's written instructions. In addition, plaintiff and DeLuca could communicate their directions regarding the Trust's investments to defendant orally, in writing, by telephone or facsimile, or by any other form of communication acceptable to defendant "except that in the case of Directed Investment Assets, [their] directions must always be in writing or confirmed by a written instrument." The Agreement also related that defendant "may establish investment guidelines and, in such cases, shall review investment policies, specific holdings, and account performance" with plaintiff and DeLuca at their request. Plaintiff also attached a copy of an investment policy review for the Trust that was signed by her on July 24, 2008, and by DeLuca on June 23, 2008, and which identified the Trust's investment objective as "balanced" and its risk tolerance as "average."

¶ 7    On July 29, 2011, defendant filed a combined motion to dismiss under section 2-619.1 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2010)) and a supporting memorandum. Defendant alleged that it was entitled to judgment on the pleadings pursuant to section 2-615(e) of the Code (735 ILCS 5/2-615(e) (West 2010)) because plaintiff had failed to allege that it did not follow the investment policy review she had signed on July 24, 2008. Defendant also alleged that plaintiff's complaint must be dismissed under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2010)) because plaintiff had admitted that she had not complied with the Agreement's requirement that any directions to sell the Trust's investments must be given in writing and she did not comply

-3-

with the legal requirement that such a direction must be signed by both cotrustrees. Defendant further alleged that plaintiff's complaint must be dismissed under section 2-619(a)(6) of the Code (735 ILCS 5/2-619(a)(6) (West 2010)) because she had signed a release of any and all claims against defendant.

¶ 8    In her response, plaintiff asserted that she complied with the Agreement's requirements when she orally directed defendant to avoid stock market risks because that instruction did not need to be in writing where it was a general instruction, and not an order for the sale of a specific security, and therefore did not involve directed investment assets. Plaintiff further asserted that each cotrustee had the authority to instruct defendant and that the release she had signed had no legal effect because it was not supported by consideration.

¶ 9    The circuit court subsequently entered a written order granting with prejudice defendant's motion to dismiss plaintiff's complaint pursuant to section 2-615(e) of the Code. In doing so, the court found that plaintiff and DeLuca were principals of the Trust's investment account, that the Agreement unambiguously provided that directions regarding directed investment assets must be made in writing, and that plaintiff did not and could not plead facts showing that her directions to defendant complied with the Agreement's requirements. The court also found that plaintiff did not and could not plead facts showing that defendant did not follow the written instructions in the investment policy review, which was signed by plaintiff and DeLuca and directed defendant to maintain a "balanced" portfolio with "average" risk tolerance. The court further found that the complaint must be dismissed because plaintiff could not instruct defendant to sell the Trust's investments in the stock market without the consent of DeLuca. In addition, the court denied defendant's motion to dismiss under section 2-619(a)(9) of the Code, finding that the release signed by plaintiff had no legal effect because it was not supported by sufficient consideration. Plaintiff now appeals from this order.

¶ 10                                              ANALYSIS

¶ 11    A motion to dismiss brought under section 2-615 of the Code attacks the legal sufficiency of a complaint by alleging defects on the face of the complaint. 735 ILCS 5/2-615 (West 2010); *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004). In ruling on such a motion, a court must accept as true all well-pleaded facts and all reasonable inferences therefrom. *Bonhomme v. St. James*, 2012 IL 112393, ¶ 34. "The critical inquiry is whether the allegations in the complaint, when construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Clark v. Children's Memorial Hospital*, 2011 IL 108656, ¶ 21. A circuit court's ruling on a section 2-615 motion is reviewed *de novo*. *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 349 (2003).

¶ 12    Plaintiff contends that the circuit court erred by dismissing her complaint and determining that her direction to defendant to eliminate the Trust's exposure to the stock market was not made in compliance with the Agreement because it was not made in writing. In construing a contract, the court's primary objective is to give effect to the intent of the parties (*Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007)), and because the contract's language is the best indicator of the parties' intent, a court should therefore abide by its plain

language (*Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007)).

¶ 13     The record shows that under the Agreement, defendant could retain, purchase, and sell the assets it administered in such manner as it determined without prior approval, and plaintiff and DeLuca could provide defendant with directions orally, in writing, by telephone or facsimile, or by any other form of communication acceptable to defendant. However, the Agreement also included an exception for directed investment assets, which were defined as specific properties that are retained, purchased, or sold pursuant to written instructions provided by the principal, and specified that directions regarding directed investment assets "must always be in writing or confirmed by a written instrument." Thus, under the Agreement's plain language, a principal's instruction to defendant to retain, purchase, or sell a specific property must be given in writing or confirmed by a written instrument.

¶ 14     Plaintiff has alleged in her complaint that she twice instructed employees of defendant in July 2008 to eliminate the Trust's exposure to the stock market, and the parties do not dispute that by doing so, plaintiff instructed defendant to sell all of the Trust's investments in the stock market. Plaintiff asserts that her oral direction to defendant was made in compliance with the provisions of the Agreement because her instructions to defendant were only required to have been made in writing when they related to directed investment assets, and the direction at issue did not concern directed investment assets where she did not instruct defendant to sell specific property. Plaintiff maintains that her direction to defendant to eliminate the Trust's exposure to the stock market was an instruction concerning general investment parameters, and did not concern specific property, such as shares of MB Financial, Inc., the example of specific property provided in the Agreement.

¶ 15     While the word "specific" is not defined in the Agreement, an undefined term in a contract will be given its plain and ordinary meaning, which is found in its standard dictionary definition. *Hunt v. Farmers Insurance Exchange*, 357 Ill. App. 3d 1076, 1079 (2005); *El Rincon Supportive Services Organization, Inc. v. First Nonprofit Mutual Insurance Co.*, 346 Ill. App. 3d 96, 102 (2004). The word "specific" is defined in the dictionary as "constituting or falling into a specifiable category" and as "sharing or being those properties of something that allow it to be referred to a particular category." Merriam-Webster Online Dictionary (2012), http://www.merriam-webster.com/dictionary/specific (last visited Dec. 18, 2012).

¶ 16     The properties at issue in this case all fall into a specifiable category where that category is the entirety of the Trust's stock market investments and share properties that allow them to be grouped together in that particular category where they all share the characteristic of being stock market investments of the Trust. While plaintiff maintains that the entirety of the Trust's stock market investments is too broad a category of properties to be deemed "specific," we note that by directing defendant to eliminate the Trust's exposure to stock market risks, plaintiff's instruction concerned a distinct and easily identifiable class of properties. In contrast, had plaintiff directed defendant to only reduce, rather than eliminate, the Trust's exposure to the stock market or sell "some" of its stock market investments, that instruction would not concern the sale of specific properties because the category of properties to be sold would have been indefinite and defendant would not have been able to

determine the exact properties that were to be sold. In this case, plaintiff directed defendant to sell a definite and easily identifiable class of properties when she instructed it to sell all of the Trust's stock market investments, and we therefore determine that she directed defendant to sell specific property when she did so. As such, the instruction at issue was related to directed investment assets and needed to have been made in writing, and we therefore conclude that the circuit court did not err by dismissing plaintiff's complaint where her direction to eliminate the Trust's exposure to the stock market was not made in compliance with the Agreement because it was not made in writing.

¶ 17                                                    CONCLUSION

¶ 18          Accordingly, we affirm the judgment of the circuit court of Cook County.


¶ 19          Affirmed.