2020 IL App (1st) 191761-U

THIRD DIVISION
December 9, 2020

No. 1-19-1761

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF CAROL RING, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| and | ) | No. 13 D 5580 |
| | ) | |
| BARRY RING, | ) | Honorable |
| | ) | Dominque Ross, |
| Respondent-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County is vacated and the cause remanded to determine spouse's burden under parties' marital settlement agreement to continue a trust established for the benefit of the minor children; the trial court erroneously excluded evidence of the parties' intent as to that burden.

¶ 2    Petitioner, Carol Ring, filed a petition for dissolution of marriage against respondent, Barry Ring, and the circuit court of Cook County entered a judgment for dissolution of marriage. The judgment, in pertinent part, incorporated by reference the parties' pretrial stipulations. Those pretrial stipulations created by the agreement of the parties a trust pursuant to section 503(g) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/503(g) (West 2014)) which would be funded by Barry and from which certain expenses of the

minor children would be paid. The Dissolution Act allows the trial court to impose a trust if the court makes a finding that it is necessary to protect the best interest of the children. The terms of the trust in this case stated the trust would expire in March 2017 unless the parties agreed it would continue or, if there was no agreement, Carol could file a petition to continue the trust and she would have the burden to show why the trust should be continued. Under the terms of the stipulation the trust would remain in place until the court ruled on Carol's petition to continue the trust. Carol timely filed a petition to continue the trust which the trial court granted. At issue is the burden of proof required to continue the trust. The trial court entered an order extending the trust, without hearing testimony or receiving documentary evidence, finding it was merely continuing a trust Barry had already agreed to. Barry appeals the order continuing the trust. For the following reasons, we vacate the trial court's judgment and remand for further proceedings.

¶ 3                                     BACKGROUND

¶ 4      The parties married in January 2009. The marriage produced two children: O.R., born July 2010, and A.R., born March 2013. The judgment for dissolution of marriage incorporated the parties' pretrial stipulations. The pretrial stipulations created a trust pursuant to section 503(g) of the Dissolution Act. The pretrial stipulations govern, *inter alia*, child-related expenses and the creation of the trust. The stipulations state, in pertinent part, as follows:

> "In addition to the $6,000 per month in child support Carol is to receive,
> Carol shall be entitled to pay certain child-related expenses out of the 503(g)
> Trust established in these Pre-Trial Stipulations, except Barry shall pay directly
> the Beth El Nursery School costs, the summer camps tuition and enrollment fees
> and costs, and the education and religious expenses.
>
> All medical expenses that are not covered by insurance *** incurred for
> the minor children shall be paid by Carol from the 503(g) Trust ***.

All activity/extracurricular expenses for the children, including, but not limited to, all the cost of fees, dues, equipment, uniforms, needed clothing or footwear, *i.e.* ballet shoes and leotards, goggles, swimsuits and any other necessary items for the [extracurricular] activity shall be paid by Carol from the 503(g) Trust ***.

The parties stipulate that in the summer of 2014, O.R. shall attend Tamarack Day Camp *** and A.R. shall attend the summer camp at the Beth El Synagogue and Barry shall be solely responsible for the timely payment of the expenses associated with the same.  ***  All items listed by the camps as needed items shall be paid by Carol from the 503(g) Trust *** excluding regular clothing and grooming items ***.

* * *

Carol shall pay all religious school/Hebrew school fees out of the 503(g) Trust.

Non-tuition related educational expenses for the children, including uniforms, registration expenses, books, recommended computers/tablets/books, graduation expenses, and mandatory field trips shall be paid by Carol out of the 503(g) Trust ***.

* * *

Barry shall be solely responsible for the payment of the tuition for such preschool, and shall pay such tuition and preschool lunch fee directly to the school.  Barry shall make the payments for these expenses timely.  ***

Upon entry of the Order incorporating the Pre-Trial Stipulations, Barry shall deposit the sum of $35,000 into [the trust] account.  ***  Within seven (7)

days of the account balance falling below $10,000, Barry shall replenish the account with an amount so that the balance equals $35,000.  From this account, Carol shall pay all expenses that are to be paid from the 503(g) Trust pursuant to these Pre-Trial Stipulations.  ***

Such 503(g) Trust shall remain in place until March 1, 2017, whereupon the 503(g) Trust shall terminate unless one of the following conditions occur. Prior to March 1, 2017, the parties shall discuss and attempt to agree upon the continuation of the 503(g) Trust.  If the parties agree in writing that the 503(g) Trust shall remain in place, it shall continue for the time period agreed by the parties in writing and the terms shall be in accordance with this Article, unless otherwise agreed in writing.  If the parties do not agree prior to March 1, 2017 that the 503(g) Trust shall continue beyond March 1, 2017, and Carol wishes for the 503(g) Trust to continue beyond March 1, 2017, it shall be Carol's responsibility to file a petition with the court for a continuance of the 503(g) Trust.  If Carol fails to file a petition requesting same prior to March 1, 2017, the 503(g) Trust shall terminate on March 1, 2017 and any monies remaining in the 503(g) Trust shall be returned to Barry by Carol writing a check by March 10, 2017.  If Carol files a petition requesting a continuation of the 503(g) Trust prior to February 1, 2017, Carol shall have the burden of proof to show the Court why the 503(g) Trust shall be continued.  However, while such petition is pending, the 503(g) Trust *** shall continue until such time until the court rules on Carol's petition.  ***

In the event the 503(g) Trust is terminated, Barry shall timely pay all of the expenses set forth in this Article as follows: Carol shall present Barry with

true and accurate copies of receipts and invoices, for such expenses within fourteen (14) days of receipt of same. Barry shall pay to Carol the amount of the expenses within fourteen (14) days of receipt of said invoices. In the event Barry does not timely pay invoices, it shall be a basis to reestablish the 503(g) Trust."

¶ 5 In January 2017, Carol filed a petition to continue the trust. Carol's petition to extend the trust alleges Carol "does not earn a sufficient income to provide for the children's needs without the existence of a 503(g) Trust." The petition alleges the minors have become involved in an increased number of activities and will continue to become involved in more activities in addition to accumulating medical expenses that are not covered under Carol's insurance plan "thereby necessitating the continued need for a 503(g) Trust." The petition also asks the court to modify the provisions of the trust to permit Carol "to utilize the trust to pay the minor children's additional expenses that [Barry] has been obligated to pay, including, but not limited to: (1) Beth El Nursery School costs; (2) summer camp tuition and registration fees and costs; (3) education expenses; and (4) religious expenses."

¶ 6 Carol alleges Barry failed to timely pay those expenses. Specifically, Carol's petition alleges Barry "has repeatedly failed to timely pay the *** insurance premiums," "failed to make payments to the Beth El Nursery School accumulating an outstanding balance *** of $5,393.00," and "failed to timely pay the Tamarak camp deposits and fees on behalf of [O.R.] for the past three (3) consecutive years." Additionally, "despite initially receiving an invoice in August 2016, [Barry] has failed to pay membership, building fund, and religious school fees in the amount of $1,735.00 to North Shore Congregation Israel." The petition claims that Barry "has displayed a repeated pattern of unwillingness to timely pay the minor children's expenses pursuant to *** the Pre-Trial Stipulations of the parties' Marital Settlement Agreement. In fact, each and every one of the expenses that [Barry] agreed to pay directly has either been paid late,

or not paid at all, through no fault of [Carol.]" Carol's petition further alleges that Barry "is already in violation" of the parties' agreement because he failed to timely pay invoices as required by the clause requiring Barry, after termination of the trust, to pay invoices for the children's enumerated expenses within fourteen days of receipt from Carol. Carol claims that for these reasons it is in the "best interests of the minor children" to extend the trust until the children are emancipated.

¶ 7    In March 2017 Barry filed a response to Carol's petition to continue the trust. The trial court ordered the parties to submit proposed replacement provisions in the trust and ordered that if the parties did not reach an agreement the court would "rule on the appropriate language to replace the 503(g) provisions of the parties' [dissolution judgment] establishing a new vehicle to pay the children's extracurricular activities." In June 2017 Carol filed her Petition for Finding of Indirect Civil Contempt and for Other Relief; in November 2018 she filed a Motion to Enforce Judgment; she also filed a petition for an adjudication of criminal contempt; a petition for attorney fees; and her Motion for 604.10(b) Parenting Evaluation and for Other Relief. The June 2017 petition claimed that in January 2016 and again in May 2017 when the balance in the trust fell below $10,000, Barry failed to replenish the trust so that the balance was $35,000, instead depositing money to bring the balance to $28,429.87 and $8,228.97, respectively. In December 2018 the trial court entered an agreed order modifying the parties' Agreed Judgment of Allocation of Parental Responsibilities. The agreed order stated that with the entry of that order Carol withdrew the aforementioned pleadings.

¶ 8    In January 2019 Carol filed a second petition for a finding of indirect civil contempt against Barry stating that in December 2018 the trust account balance fell below $10,000 and soon after Barry deposited only $2,000 into the account thereby failing to replenish the account so that the balance equaled $35,000. In February 2019 Barry filed a petition to terminate the

trust, reallocate child-related costs, and for other relief. The petition alleged, in part, that Carol continued to violate the pretrial stipulations "by enrolling the children in new activities without Barry's agreement, without properly notifying Barry in advance of such activities, and repeatedly without providing adequate receipts." Barry also claimed that Carol "inappropriately uses the 503(g) Trust for her own personal expenses" asserting that in 2018 her "personal, unauthorized, or insufficiently documented expenditures" from the trust accounted for 65% of the money spent.

¶ 9    In June 2019 the trial court conducted a hearing on Carol's petition to continue the trust. At the hearing, Carol's attorney argued Carol brought the petition because "Barry refused to follow orders of the Court." Carol's attorney argued Barry habitually paid the expenses he was to pay directly late and questioned why a "mechanism that was established to aid Carol in paying for expenses incurred on behalf of the minor children that was also found to be in their best interests" should be removed. Counsel cautioned that if the 503(g) trust were not continued the court would be "flooded with court dates on these issues as a result of Barry's refusal to comply with the orders of the Court." Counsel claimed that without the trust Carol would be forced to utilize the court to enforce the parties' agreement. Carol's attorney argued that continuing the trust was "equitable as well as in the best interests of the minor children."

¶ 10    The trial court inquired as to how many rules to show cause Carol had filed for Barry's failure to pay "that either resulted in some type of negotiated settlement or a ruling from the Court?" Counsel responded "We believe 14, Judge. Pre-decree *** included."

¶ 11    Carol's attorney argued that "our goal is to keep the Rings out of court. By keeping and expanding the 503(g) trust, I think we have a great chance of doing that." In connection with the request that the trial court expand the trust to permit Carol to pay from the trust those items Barry was ordered to pay directly, counsel also claimed that Carol "would not have taken some of the other deals that she took had it not been for this 503(g) trust being established."

¶ 12    In response, Barry's attorney argued, in pertinent part, as follows:

>    "So what really is the process here?  ***  [It] says *** that if Carol files a
>    petition requesting a continuation of 503(g) trust prior to February 1, 2017, Carol
>    shall have the burden of proof to show the Court why the 503(g) trust should
>    continue.  Now, that doesn't say why it was—why it should continue doesn't
>    mean why it was in place in the first time.  That was an agreement.  So what has
>    really happened since that time?"

¶ 13    Counsel argued the imposition of a trust was an extreme remedy and that no case had
imposed a 503(g) trust on an obligor who had "timely paid $6,000 a month in child support for
*** over five years."  The trial court asked, "Then why did he agree to it?" and counsel
responded that fact was irrelevant.  The court later said "[B]ut don't make it seem as if it's some
extreme remedy for the Court to continue it considering everything that's gone on post-decree."
Counsel agreed Carol had filed three petitions for rule to show cause against Barry but stated
they were unrelated to the 503(g) trust and none had resulted in a finding of contempt.

¶ 14    Barry's attorney cited authority related to the issuance of a trust to which the trial court
responded, "This isn't the creation of a 503(g) trust.  This is the continuation of a 503(g) trust
that your client agreed to."  Barry's attorney responded to the trial court's comment as follows:

>    "The burden of proof is on them to establish the continuation.  What is
>    that burden of proof?  It isn't that—if it's just that he agreed to it, then we
>    wouldn't be having a hearing.  If it's just that—there's got to be a basis to
>    continue it and that they have that burden of proof, Judge, and that burden of
>    proof goes to what the law says you need to do to have a 503(g) trust; and the law
>    is not that it makes it easier for her to get paid, it secures the payment.  There's

got—the cases are where people go out of the county, they're incarcerated, they're found repeatedly in contempt of court.

* * * [T]here's nothing that's happened since then other than the disagreement as to payment of certain expenses which have all been paid because she has unilateral authority to write checks and thereby negating his ability under the agreement to object.

* * *

*** [I]t is not necessary to have a 503(g) trust where two petitions for rule to show cause *** were filed that led to nothing and where the parties at best are disagreeing as to whether an expense is necessary ***.

This is not a legally sufficient basis under Illinois law for the imposition, continuation, whatever you want to call it, of a 503(g) trust."

Barry's attorney argued the law did not permit the imposition of a trust so that Carol would not have to talk to Barry and that the trust should not be continued because he has the ability to pay and because there had been no demonstrated—in the form of hearings or rules to show cause— unwillingness to pay the children's expenses.

¶ 15    The trial court stated it wanted to see all of the orders it had entered in this case and commented that "just the fact that there was a 503(g) and as you stated there is a very—that's an extreme remedy, there must have been some extreme circumstances going on for them to have come back to such an agreement.  So I want to see all the orders that have been entered by me."

¶ 16    Carol's attorney argued in reply that the reason for a lack of findings of contempt is that Barry has paid after Carol's attorneys have drafted and presented the petitions for rule, but "why should our client have to pay us to do that?"  Later, after the trial court again noted that "this is not the establishment; it is the continuation.  It's already been done," Barry's attorney argued,

"But why would there be—you have to—why would there be language in the stipulation itself that it's their burden of proof to establish it continues? That has to mean something." The court responded as follows:

> "That means that the person has to file a petition just like anybody.
> Nobody says they just get it, but I just want to make it clear that it is not the
> creation, it is the continuation. And there may not be a distinction, but I will find
> out as I read these cases."

¶ 17     Barry's attorney continued to argue the language in the stipulation placing the burden on Carol to show why the trust should continue "has to mean something. *** And what would most logically they have to prove to have this continue? That there is a need for it. And, therefore, what does the law tell you what the need is for it." The trial court responded, "Which is why I asked what was the need for it pre-decree ***."

¶ 18     Barry's attorney later pointed to section 4.1 of the pretrial stipulations as a demonstration of the reason for the initial imposition of the trust. Section 4.1 reads, in pertinent part, as follows:

> "The parties acknowledge that the child support set forth in paragraph 4.0
> is a deviation below the guidelines of statutory child support for two (2) children.
> The parties agree that a deviation below guideline child support is appropriate in
> this matter in consideration of the fact that Barry is a high income earner and has
> earned a gross income in excess of $2 or $3 million per year during the parties'
> marriage and takes into consideration the age and actual needs of the children, the
> payment of child related expenses by Barry and the establishment of a 503(g)
> Trust and the children's lifestyle and the fact Carol will have up to $750,000 that

she can use to buy a house, but there is no stipulation that she must use all $750,000 or purchase the home."

¶ 19    Barry's attorney argued that language was the "best evidence and only evidence" of why the trust was imposed, and that the language showed that a "give and take" as part of an entire settlement was the reason for the initial imposition of the trust. Barry's attorney offered to elicit testimony from Barry and Carol but the trial court declined. The trial court reviewed the language of the parties' agreement and stated it "says if the parties don't agree that there's a trust and Carol wishes for the 503(g) trust to continue, not that [the trust should continue because Barry] failed to do something, but that [Carol] wishes." The court continued, "So it doesn't have to be this extreme remedy you [(Barry's attorney)] speak of." Barry's attorney disagreed arguing Carol must prove something more than "she wants it;" "[s]he has to prove that it's appropriate under the law."

¶ 20    Carol's attorney added that it was his sense that the parties agreed to the trust "to simplify things."

¶ 21    Following the hearing, at which Carol called no witnesses or introduced any documentary evidence, the trial court entered an order stating, in pertinent part, as follows: "The 503(g) Trust established under the March 2014 Pre-trial stipulations shall continue in its current form based on the court's observations of the motions filed back and forth by both parties, their agreement to establish the trust, and nothing has changed."

¶ 22    This appeal followed.

¶ 23                                      ANALYSIS

¶ 24    The imposition of a trust for the support and maintenance of the minor children of a dissolution is controlled by section 503(g) of the Dissolution Act and our supreme court's construction of that section in *Atkinson v. Atkinson*, 87 Ill. 2d 174 (1981).

"Section 503(g) of the Act provides:

'[t]he court if necessary to protect and promote the best interests of the children may set aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, physical and mental health, and general welfare of any minor, dependent or incompetent child of the parties.' 750 ILCS 5/503(g) (West 2012).

* * *

We review the decision to impose a trust under section 503(g) of the Act under an abuse of discretion standard. [Citation.]" *In re Marriage of Liszka*, 2016 IL App (3d) 150238, ¶ 77.

¶ 25    In *Atkinson*, our supreme court found that in that case the trial court had "exceeded the scope of its discretion in ordering the establishment of a trust fund for the benefit of the children." *Atkinson*, 87 Ill. 2d at 178. Our supreme court held that "the imposition of a section 503(d) trust is 'inappropriate in the absence of evidence showing some need to protect the interests of the children' [citation] and therefore inappropriately applied to a *responsible* parent." (Emphasis added.) *Id.* at 179. Since *Atkinson*, courts have held that "[a] need for such protection arises when the obligor spouse is either unwilling or unable to make child support payments. [Citations.]" *In re Marriage of Popa & Garcia*, 2013 IL App (1st) 130818, ¶ 23, citing *In re Marriage of Steffen*, 253 Ill. App. 3d 966, 969 (1993) (the court has the authority to create a section 503(g) trust even in postdecree proceedings; authority to create such a trust is not limited to the time of the original decree dividing the property). We have held that "[a]pplication of section 503(g) *** *demands* evidence of a demonstrated unwillingness or inability by a parent to make direct payments of child support." (Emphasis added.) *In re Marriage of Pickholtz*, 178

- 12 -

Ill. App. 3d 512, 517 (1988), citing *Atkinson*, 87 Ill. 2d at 179; *In re Marriage of Rochford*, 91 Ill. App. 3d 769, 782 (1980).

> The "imposition of such an obligation is ' "inappropriate in the absence of evidence showing some need to protect the interests of the children" [citation omitted] and therefore inappropriately applied to a responsible parent' [citation]; that is, there must be some demonstrated unwillingness or inability to provide for the children [citation]." *In re Marriage of Wilder*, 122 Ill. App. 3d 338, 355 (1983), citing *Atkinson*, 87 Ill. 2d at 179; *In re Marriage of Preston*, 81 Ill. App. 3d 672 (1980).

¶ 26    On appeal from the trial court's order continuing the trust in its current form, Barry argues (1) the trial court abused its discretion by *imposing* a 503(g) trust without finding Barry is unwilling or unable to pay child support; (2) the trial court abused its discretion in relying on the parties' prior agreement to the trust to continue the trust, thereby ignoring and failing to give effect to the language in the trust imposing the burden on Carol to show there is, according to Barry, "cause for the trust to be imposed by Court order rather than agreement," and effectively shifting the burden to Barry "to show that something has changed to warrant the termination of the agreement;" (3) the trial court exceeded its authority by finding that the parties' post-decree litigation history constituted grounds for *imposing* a 503(g) trust against him; (4) the trial court erred in construing the pretrial stipulations to not require Carol to prove the necessity of the trust under the *Atkinson* standard and Carol failed to satisfy her burden to prove the "legal and factual" need for a 503(g) trust.

¶ 27    The parties dispute whether the trial court actually *imposed* a 503(g) trust or whether it merely *continued* the existing trust. If the latter, then the trial court was required to construe and apply the language of the parties' pretrial stipulations incorporated into the marital settlement

agreement to hold that Carol satisfied her burden under the parties' agreement "to show the Court why the 503(g) Trust shall be continued."

> "We construe a [marital settlement agreement] in the same manner as a contract. [Citation.] Our primary objective is 'to give effect to the purpose and intent of the parties at the time they entered into the agreement.' [Citation.] If the terms of the agreement are unambiguous, we must give effect to that language. [Citation.] By contrast, if the agreement is ambiguous, *i.e.*, where the language is susceptible to more than one reasonable interpretation, a court may hear parol evidence to determine the parties' intent. [Citations.] We review a circuit court's interpretation of a marital settlement agreement *de novo*. [Citation.]" *In re Marriage of Shulga*, 2019 IL App (1st) 182028, ¶ 23.

¶ 28 Barry argues that under the terms of the parties' agreement, as stated in the pretrial stipulations incorporated into the marital settlement agreement, the trust terminated on March 1, 2017 and thereafter, the "contract" required Carol to file a petition and establish the need for a trust under the current law. Specifically, Barry argues the "trial court erred in interpreting the terms of the Pretrial Stipulations to constitute a waiver of Carol's obligation to prove that the 503(g) was necessary." Barry argues that the trial court "ignore[d] the plain and ordinary meaning of the 503(g) termination clause" and "essentially shifted the burden of proof to Barry to show that something has changed." According to Barry, the pretrial stipulations evince an "intent to terminate absent proof of grounds for continuation [(under the *Atkinson* standard)];" and the "plain and ordinary meaning interpretation of [the termination clause] is that the Trust should terminate on March 1, 2017, unless there is a reason for it to be extended" under *Atkinson*. Specifically, "[t]he trial court's failure to enforce the agreed order and require Carol to make an affirmative showing that the Trust was necessary pursuant to the standard set forth by

- 14 -

our supreme court in *Atkinson*, 87 Ill. 2d at 174 was an abuse of discretion." Barry argues that burden shifting is "not supported by a plain and ordinary meaning construction of the agreement, nor is it supported by the law on of 503(g) Trusts."

¶ 29    Carol responds that pursuant to the parties' agreement she was not required to prove the trust is necessary to protect the best interests of the children. Instead, "she would only have to prove why the Trust should continue, not that it was established to protect the best interests of the children." Moreover, Carol argues that pursuant to the parties' agreement the trust "never terminated" because she "satisfied one of the termination exceptions" by filing her petition to continue the trust. For that reason, Carol argues, Barry cannot argue the trial court's order constitutes a judicial imposition of a 503(g) trust under the requirements of the Dissolution Act and *Atkinson*. Carol argues the pretrial stipulations included provisions regarding the burden of proof to show the court why the trust should continue that Barry is now trying to ignore; but the court should construe the trust not to require application of the "necessary to protect the best interests of the children" standard. Carol argues the only standard she had the burden to meet was to show why the trust should be continued which she contends she did. Specifically Carol argues she showed that the trust should be continued because it is necessary to ensure timely payment of the children's expenses and that it is in the interest of judicial economy to continue the trust.

¶ 30    First, we reject Barry's argument the trust terminated on March 1, 2017.

> "The language used in the agreement is usually the best indication of the
> parties' intent. [Citation.] When the terms of the agreement are unambiguous, we
> determine the parties' intent solely from the language of the agreement.
> [Citation.] An ambiguity is not created simply because the parties disagree on the

meaning of any provision." *In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 76.

The terms of the agreement in this case are not susceptible to more than one reasonable interpretation. The pretrial stipulations state the "Trust shall remain in place until March 1, 2017, whereupon the 503(g) Trust shall terminate *unless* one of the following conditions occur." One of those conditions was that Carol "file a petition with the court for a continuance of the 503(g) Trust" before March 1, 2017. The pretrial stipulations state that only if Carol "failed to file a petition *** the 503(g) Trust shall terminate on March 1, 2017." But "[i]f Carol files a petition requesting a continuation" and "while such petition is pending, the 503(g) Trust *** shall continue until such time until the court rules on Carol's petition." Carol filed her petition in January 2017. Because the terms of the agreement are unambiguous we must look solely to the language of the agreement itself and give effect to that language. *In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 76, *In re Marriage of Shulga*, 2019 IL App (1st) 182028, ¶ 23. Applying these principles in this case, we hold that the trust did not terminate on March 1, 2017. Rather, the trust continued until the trial court ruled on the petition.

¶ 31     Second, we hold that the trial court's judgment did not impose a new trust but instead the court's judgment continued the existing trust pursuant to the parties' agreement. "Under ordinary circumstances, a settlement agreement incorporated into a judgment for dissolution of marriage is a contract that is governed by principles of contract law because it is an agreement between the parties and not a judicial determination of the parties' rights." *In re Marriage of Booth*, 325 Ill. App. 3d 92, 94 (2001). "We will not construe the terms and provisions in a manner that is contrary to or different from the language's plain and obvious meaning. [Citation.]" *In re Marriage of Turrell*, 335 Ill. App. 3d 297, 305 (2002). Agreements are "construed with reference to the average, ordinary, normal, reasonable person." *West Bend*

*Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*, 2020 IL App (1st) 191834, ¶ 28. When a "term is to be given its plain and ordinary meaning *** courts often refer to dictionaries in making this determination." *Sanders v. Illinois Union Insurance Co.*, 2019 IL App (1st) 180158, ¶ 18, reversed on other grounds, 2019 IL 124565. Thus to ascertain the plain and obvious meaning of a term we may look to the dictionary. See, *e.g.*, *In re Marriage of Talmadge*, 179 Ill. App. 3d 806, 813 (1989) (referencing dictionary definitions of "consult" and "advise" in interpretation of marital settlement agreement), *Laport v. MB Financial Bank, N.A.*, 2012 IL App (1st) 113384, ¶ 15 ("an undefined term in a contract will be given its plain and ordinary meaning, which is found in its standard dictionary definition").

¶ 32     Again looking to the language of the agreement, which is "usually the best indication of the parties' intent" (*In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 76), the pretrial stipulations contemplate a continuation of the existing trust and not the imposition of a new trust. The agreement first states that if the parties agree the trust "shall continue for the time period agreed by the parties." In the absence of an agreement between the parties the trust gives Carol the right to "file a petition with the court for a *continuation* of the 503(g) Trust." (Emphasis added.) Further, the agreement expressly imposes on Carol the burden to show why the trust "shall be continued" and provides that the trust "shall continue" until the court rules on the petition. To "continue" means "to maintain without interruption a condition, course, or action," "to remain in existence" or "endure." https://www.merriam-webster.com/dictionary/continue (visited October 8, 2020). The "plain and obvious" meaning of the agreement to an "ordinary, normal, reasonable person" (*In re Marriage of Turrell*, 335 Ill. App. 3d at 305, *Krishna Schaumburg Tan, Inc.*, 2020 IL App (1st) 191834, ¶ 28) is that the issue before the trial court upon the filing of a petition to continue the trust would be why the trust established by the agreement should be maintained or remain in existence (*In re Marriage of Talmadge*, 179 Ill.

App. 3d at 813) not, expressly (although potentially), whether Carol proved the existence of a "need to protect the interests of the children" because Barry "is either unwilling or unable" to support the children. Barry's arguments that the trial court imposed a 503(g) trust in this case fail.

¶ 33    Nonetheless, the parties' dispute raises the question of the parties' intent as to the meaning of "why the 503(g) Trust shall be continued" in the pretrial stipulations. The pretrial stipulations do not state Carol's burden of persuasion (what she must prove) [1] as to "why the 503(g) Trust shall be continued." That is, the agreement provides no guidance as to what Carol must show to establish "why" the trust "shall" continue. Therefore, we hold the contract is ambiguous. "If *** the contract is susceptible to more than one meaning, then an ambiguity is present." *Motorola Solutions, Inc. v. Zurich Insurance Co.*, 2015 IL App (1st) 131529, ¶ 115, citing *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999). "An ambiguous contract is one capable of being understood in more senses than one; an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning.' [Citation.]" *Pioneer Trust & Savings Bank v. Lucky Stores, Inc.*, 91 Ill. App. 3d 573, 575 (1980).

> "The issue of whether or not an ambiguity exists is a question of law to be determined by the court. [Citations.] Since construction of a contract presents an issue of law in the absence of any material questions of fact, the reviewing court may independently construe the contract ([citation]), unrestrained by the trial

---

[1]    See, *e.g.*, *In re Marriage of Schwartz*, 131 Ill. App. 3d 351, 354 (1985) (setting forth "the burden of persuasion" on a "party seeking the injunction"). See also *City of Chicago v. Illinois Workers' Compensation Comm'n*, 373 Ill. App. 3d 1080, 1090 (2007) ("burden of persuasion, *** has been defined as '[a] party's duty to convince the fact-finder to view the facts in a way that favors that party' (Black's Law Dictionary 190 (7th ed.1999))"); *Gupta v. Austrian Airlines*, 211 F. Supp. 2d 1078, 1085 (N.D. Ill. 2002) (setting forth two elements in forum *non conveniens* inquiry and stating "defendants bear the burden of persuasion as to all elements"); *People v. Hall*, 311 Ill. App. 3d 905, 913 (2000) (distinguishing burdens).

court's judgment ([citation])." *Ancraft Products Co. v. Universal Oil Products Co., Inc.*, 100 Ill. App. 3d 694, 697-98 (1981).

¶ 34    In this case, we find the contract is ambiguous as a matter of law. The contract is indefinite in its expression of what exactly Carol had to prove and the language of the contract is susceptible to more than one reasonable meaning in that regard. The agreement might mean that Carol must show the need for a 503(g) trust under prevailing law which in this instance means the *Atkinson* standard. Alternatively, the agreement might mean that Carol must show either that conditions and/or agreements leading to the parties' initial agreement to enter the trust (whatever they may be) have not changed (as the trial court may have found in this case, see *infra*, ¶¶ 36-37), or that there are other "reasons" for the continuation of the trust beyond Barry's unwillingness or inability to pay the children's expenses covered by the trust, or Barry's unwillingness to fully replenish the trust and/or timely pay the children's expenses he mut pay directly (again, two of the facts on which the trial court may have relied in this case (*id.*)), or all of the above or something different altogether.

¶ 35    "[T]he terms of the contract, and the intent of the parties are questions of fact to be determined by the trier of fact, and this court will not reverse the trial court's judgment unless it is contrary to the manifest weight of the evidence." *In re Marriage of Haller*, 2012 IL App (5th) 110478, ¶ 29. "[I]f the language contained in the contract is ambiguous or silent as to essential terms then oral testimony may be properly admitted into evidence." *Farnsworth v. Lamb*, 6 Ill. App. 3d 785, 788 (1972). "[I]f the agreement is not complete or if the language of the instrument is ambiguous or uncertain, then in either event extrinsic evidence may be introduced to expand or interpret the document, as the case may be." *Weiland Tool & Manufacturing Co. v. Whitney*, 44 Ill. 2d 105, 114 (1969).

"Parole evidence which does not vary or contradict the document under consideration is admissible to establish a fact as to which the instrument is silent. [Citation.]

'The intention of the parties, it is true, must govern; but the experience of human affairs teaches the courts that this intention is not to be sought merely on the apparent meaning of the language used, but this language may be enlarged or limited by reference to the circumstances surrounding the parties and the object they evidently had in view.' [Citation.]" (Internal quotation marks omitted.) *New York Central Development Corp. v. Byczynski*, 95 Ill. App. 2d 474, 476-77 (1968).

¶ 36    The issue of what Carol had to "show" to continue the trust was raised at the hearing on the petition. Barry's attorney directed the trial court's attention to section 4.1 of the pretrial stipulations (quoted above). To adopt Barry's argument we would have to find that when the parties entered the agreement the parties' intended that Carol's burden to obtain a continuation of the trust is to show that a trust was needed "protect the interests of the children" because he was "either unwilling or unable" to support the children.

¶ 37    The trial court did not expressly articulate its interpretation of the parties' intent as to what Carol had the burden to "show" to continue the trust. The trial court's written judgment held that Carol had satisfied her burden, whatever it was, based on the court's "observations of the motions filed back and forth by both parties, their initial agreement to establish the trust, and nothing has changed." From the trial court's judgment, we can glean that the trial court may have considered that Carol had to come to court to at minimum coerce Barry to pay expenses he was to pay directly and to replenish the trust to the levels required by the agreement, that the

parties at one point felt a trust necessary to alleviate whatever concerns they had about other expenses, and that nothing in the record indicated to the court that those circumstances had changed. However, Barry's attorney posited that the trust resulted from negotiations on several other matters as evidenced by section 4.1 of the parties' agreement (*supra*, ¶ 18). Section 4.1 of the parties' agreement suggests the parties' intent behind creation of the trust (or why Carol "wanted" it, if that is indeed how the trial court construed the agreement's termination clause) was more than convenience but at least included a compromise away from statutory support and the children's activities at that time, among other possible considerations.

¶ 38    If, as strongly suggested by the trial court's judgment, the trial court found that the parties' intended that the trust should continue if the circumstances that generated the parties' intent behind initially creating the trust had not changed, then parol evidence on that intent was clearly admissible. Normally, we will not reverse the trial court's determination of the intent of the parties unless it against the manifest weight of the evidence. Here, however, we note that Barry's attorney offered (perhaps facetiously, perhaps not) to elicit testimony as to the parties' reasons and intent in creating the trust, but the trial court refused. Additionally, during the hearing, the trial court noted that the language of the agreement implied that the trust should continue "if Carol wants it" which itself might imply "if Carol [*still*] wants it" for whatever reason she originally wanted it, which we do not know beyond her attorney's representation that it was "to simplify things." Whether or not that representation is enough, in assessing the evidence we cannot ignore the parties' express language in section 4.1 of the agreement in determining the parties' intent with regard to the termination clause in the agreement. When construing a marital settlement agreement, "[w]e consider the instrument as a whole and presume that the parties included each provision deliberately and for a purpose. [Citation.]" *In re*

*Marriage of Turrell*, 335 Ill. App. 3d at 305. "The language used in the agreement is usually the best indication of the parties' intent." *In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 76.

¶ 39    The parties' elicited no evidence of intent beyond the language in the agreement (which we have determined to be ambiguous) and Carol's attorney's argument. "Where ambiguity in a contract exists, 'the trial court's determination of the intent of the parties must not be disturbed on review unless it is contrary to the manifest weight of the evidence.' [Citation.] 'A factual finding is against the manifest weight of the evidence if the opposite conclusion is plainly evident, or where the decision is unreasonable, arbitrary or without a basis in the evidence.' [Citation.]" *Motorola Solutions., Inc.*, 2015 IL App (1st) 131529, ¶ 117. We find that the trial court's determination of the parties' intent is without a sufficient basis in the record because the evidence of the parties' intent that is in the record is at best conflicting and the trial court erroneously excluded evidence to shed light on the evidence that does exist. As Carol herself noted, the children have become involved and will continue to become involved in more activities; thus, at minimum, if those elements formed part of the parties' intent in creating the trust, then the trial court's finding that "nothing has changed" is against the manifest weight of the evidence. See *In re Nicholas L.*, 407 Ill. App. 3d 1061, 1073-75, *In re Marriage of Lundahl*, 396 Ill. App. 3d 495, 506 (2009) (applying manifest weigh of the evidence standard where there is a lack of sufficient evidence). We also note the trial court was keenly interested in why Barry agreed to the trust but then took no evidence on the question. The court stated the issue was not "creation, it is the continuation. And there may not be a distinction, but I will find out as I read these cases;" but then never stated what it found.

¶ 40    As noted above, the trial court did not expressly rule as to what exactly Carol had to prove as to "why" the trust should "continue;" and Barry's and Carol's testimony may have shed light on these questions but none was taken. "A trial court's evidentiary ruling is a matter of

discretion and will not be reversed absent a clear abuse of discretion." *In re Estate of Hoover*, 155 Ill. 2d 402, 420 (1993).

" 'It is well settled that a judgment should be reversed because of error only when it appears that the error affected the result of the trial. [Citations.] In reviewing a jury's verdict, an appeals court need not determine that the record is free from error [citation]; rather, the court need only determine whether any error occurred which operated to the prejudice of a party or which unduly affected the outcome [citations].' [Citation.]" *Elder on Behalf of Finney v. Finney*, 256 Ill. App. 3d 424, 428 (1993).

¶ 41    We find the trial court abused its discretion in refusing Barry's attorney's proffered evidence because it may have made a difference in the outcome of the hearing. See, *e.g.*, *Cross v. Cross*, 2 Ill. 2d 104, 110-11 (1954) (holding trial court erred in refusing to hear proof of equitable interest in property in dissolution proceeding), *cf. Baker v. Baker*, 412 Ill. 511, 518-19 (1952) ("It is difficult to see how receiving the plaintiff's statement of his intent in making the conveyance could reasonably have affected the determination reached by the trial court, in the light of this record. A judgment will not be reversed for error unless it appears such error affected the outcome below."). A lack of evidence and express findings by the trial court hinders our review. See, *e.g.*, *Decker v. Union Pacific Railroad Co.*, 2016 IL App (5th) 150116, ¶¶ 49-50 (discussing remand for more definite findings even though trial court generally not required to make them).

¶ 42    Finally, we reject Barry's argument that "as the party without the burden of proof, [he] should be entitled to judgment in his favor" because Carol failed to meet her burden. Barry argues "Carol does not cite to any evidence to show why a trust should be continued, even if there is a difference [between imposing a trust and continuing a trust.]" (Emphasis omitted.) We

reject Barry's arguments because, as explained above, there was some evidence of the meaning of "why the 503(g) Trust shall be continued" in the language of the agreement, which is normally the best indication of the parties' intent. In this case, however, the trial court's judgment in favor of Carol is vacated because it barred testimony which could clarify the intent of the parties.

¶ 43     For the foregoing reasons, we vacate the trial court's judgment and remand for further proceedings. We instruct the trial court to accept testimony regarding the formation of the parties' agreement if offered and to make express findings as to Carol's burden of persuasion under the termination and continuation clause of the parties' agreement.

¶ 44                                        CONCLUSION

¶ 45     For the foregoing reasons, the judgment of the circuit court of Cook County is vacated and the cause remanded for further proceedings not inconsistent with this order.

¶ 46     Vacated and remanded, with instructions.